IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: | Case No.: 20-13482 |
| | Chapter 11 |
| RHA Stroud, Inc.,[1] | |
|     Debtor. | [Joint Administration Pending] |
| _____/ | |
| In re: | Case No.: 20-13483 |
| RHA Anadarko Inc., | Chapter 11 |
|     Debtor. | |
| _____/ | |

**DEBTORS' APPLICATION FOR ENTRY OF ORDER (I) SHORTENING TIME FOR OBJECTION DEADLINE, (II) APPROVING NOTICE PROCEDURES, AND (III) SETTING EXPEDITED HEARING OF FIRST DAY MOTIONS**

Debtors RHA Stroud, Inc. d/b/a Stroud Regional Medical Center ("Stroud Hospital") and RHA Anadarko Inc., RHA Anadarko, Inc. a/k/a The Physicians' Hospital in Anadarko ("Anadarko Hospital") (each a "Debtor," and collectively, the "Debtors" or "Hospitals"), by and through their undersigned counsel, respectfully file this *Application for Entry of Order (I) Shortening Time for Objection Deadline, (II) Approving Notice Procedures, and (III) Setting Expedited Hearing of First Day Motions* (the "Application"). The facts and circumstances supporting this Application are set forth in the *Declaration of Charles M. Eldridge in Support of First Day-Motions* (The "First Day Declaration") filed contemporaneously herewith.

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification number is: RHA Stroud, Inc. (2635) and RHA Anadarko, Inc. (2528). The principal place of business for the Debtors is 2308 Highway 66 West, Stroud, OK 74079 and 1002 East Central Blvd. Anadarko, OK 73005.

55143656;1

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested herein are Federal Rule of Bankruptcy Procedure 9006 and Local Rule 9006-1.

**BACKGROUND**

4. On October 25, 2020 the ("Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11, title 11, United States Code, 11 U.S.C. § 101-1532 (the "Bankruptcy Code").

5. The Debtors are operating their business and managing their affairs as debtors-in-possession under 11 U.S.C. § 1107(a) and 1108.

6. The Debtors are the largest non-profit healthcare system based in Lincoln County and Caddo County, Oklahoma, with combined annual revenues of approximately $94.3 million in fiscal year 2019. One Cura Health f/k/a One Cura Wellness is the parent non-profit organization of the Debtors. Affiliate companies operate two medical clinics located in Stroud and Anadarko, Oklahoma.

7. The Debtors operate as a nonprofit health care system providing medical services to patients who generally reside in Lincoln County and Caddo County, Oklahoma and surrounding communities. Collectively, they have fifty (50) licensed beds, two active emergency rooms, and a host of medical specialties.

8. The Hospitals in the health care system are designated Critical Access Hospitals ("CAH").[2] The Patient Days for the past year have exceed 12,000 cumulative patient days at an approximate 88% capacity for the hospitals. Emergency Room visits exceed 7,500 per year. There were 880 Outpatient Surgeries for 2019 and that number is expected to be similar for 2020.

9. Debtors' necessity to the health and welfare of the people of Lincoln County and Caddo County and surrounding counties is evidenced by several facts, including having the:

*only* Post-acute, medically complex swing bed program in Lincoln / Caddo County;

*only* Emergency Rooms in Lincoln / Caddo County;

*only* hospitals that offer inpatient/bedside dialysis in Lincoln / Caddo County

*only* hospital in Stroud, Oklahoma; and

*only* hospital in Anadarko, Oklahoma.

10. The Hospitals are designated Critical Access as they are safety nets for people that cannot travel to the larger cities for care – and are especially critical for time-sensitive diagnosis and treatments such as heart attacks and strokes. The nearest alternative hospitals to Anadarko Hospital and Stroud Hospital are located respectively seventeen (17) and twenty (20) miles away.

---

[2] To be eligible to be a CAH the hospital must be located in a State that has established a State Medicare Rural Hospital Flexibility Program; be designated by the State as a CAH; be located in a rural area or an area that is treated as rural; be located either more than 35-miles from the nearest hospital or CAH or more than 15 miles in areas with mountainous terrain or only secondary roads; OR prior to January 1, 2006, were certified as a CAH based on State designation as a "necessary provider" of health care services to residents in the area; maintain no more than 25 inpatient beds that can be used for either inpatient or swing-bed services; maintain an annual average length of stay of 96 hours or less per patient for acute inpatient care (excluding swing-bed services and beds that are within distinct part units); demonstrate compliance with the CAH CoPs found at 42 CFR Part 485 subpart F; and Furnish 24-hour emergency care services 7 days a week. *See* https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/CAHs

11. The Hospitals also provide a plethora of community service initiatives – many have been developed in partnership with local governments, police, schools and universities, etc. These programs include but are not limited to:

- Adult Basic Education (GED Preparation)
- Adult Financial Literacy
- Diabetes Prevention Program
- Telehealth Assessment Program (TAP)
- Wichita & Affiliated Tribes RISE Program for Suicide Prevention
- Dinner & Learn Series
- Diabetes Empowerment Education Program (DEEP)
- Meals on Wheels
- Tai Chi Classes
- Community Computer Access Program (CCAP)
- Live healthy, Eat healthy, and be Active with Diabetes (LEAD)
- Community Health Fairs

12. The Debtors have no employees. All physicians, medical staff and employees are retained by First Physicians by virtue of documents such as a Staffing and Provider Services Agreement.

13. Collectively, the Debtors provide the following services: 24 hour emergency department, inpatient medical services, inpatient surgical services, ambulatory and outpatient surgical services (including gastro intestinal procedures, general surgery, pain management, podiatry, ophthalmology, orthopedic, urology), cardiology clinic services, dialysis, physical and occupational therapy, speech therapy, respiratory therapy, radiology and imaging services to

4

55143656;1

include CT scanning, Xray, and ultrasound, sleep disorder diagnostic services, full service laboratory testing, acute inpatient services, skilled nursing facility, swing bed inpatient services, wellness programs, inpatient wound care, and wound care clinic.

14. Each Hospital has an Advisory Board which is composed of local citizens, including educators, Chamber of Commerce, local Native American tribal leaders, bankers, and health practitioners.

15. The Debtors are subject to numerous laws and regulations of federal, state, and local governments related to licensure, accreditations, and government healthcare program participation requirements, and reimbursement for patient services. For instance, the Hospitals are licensed by the Oklahoma Health Care Authority and Oklahoma State Department of Health and are certified to participate in the Medicaid and Medicare programs.

16. The Debtors are a party to a multiple of contracts and notes, including a management agreement, real property lease, ancillary service contracts, and staffing leasing agreement with companies collectively referred to herein as First Physicians.

17. First Physicians filed suit against the Debtors seeking *inter alia* money judgments on two promissory notes and a lease, evict the Hospitals from the leased premises, and appointment of a receiver.

18. This has triggered a real threat to the Debtors being able to keep operating the Hospitals and providing quality health services to the communities of Stroud and Anadarko.

19. The Debtors' assets include their operating Hospitals, the lease rights to real estate on which the Hospitals operate, accounts receivable, equipment, supplies, and cash on hand. The Debtors have approximately $12.8 million in net accounts receivable ("A/R") as of September 30, 2019 based on historic collection rates. As of the Petition Date, the Debtors'

combined cash on hand is $3,115,735.08. The Debtors aver they also have causes of action based upon significant failures caused by First Physicians.

20.  The Debtors have been hampered in their first day filings as First Physicians is currently in possession of Debtors' books and records.  Upon initiating this bankruptcy case, the Debtors expect that First Physicians will provide the Debtors' access to its books and records so that the Debtors can comply with their bankruptcy obligations.

21.  The Debtors believe that a successful restructuring can only occur under the protection of bankruptcy.

## **RELIEF REQUESTED AND BRIEF IN SUPPORT**

The Debtors respectfully requests that the Court enter an Order shortening time, approving notice procedures, and setting an expedited hearing on certain motions the Debtor anticipates filing on the Petition Date as follows (the "First Day Motions"):

i. Debtors' Emergency Motion for Order Authorizing Joint Administration Pursuant to Bankruptcy Rule 1015 and Local Rule 1015;

ii. Debtors' Emergency Motion for Entry of Order Authorizing Debtors in the Ordinary Course to Use Cash Management System and Maintain Use of Pre-Petition Lockbox Accounts; and

iii. Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Hospitals to Use Cash Collateral, (II) Granting Conditional Adequate Protection to the Secured Party, (III) Scheduling a Further Interim Hearing and (IV) Scheduling a Final Hearing and (V) Granting Related Relief.

The relief being sought in the First Day Motions is essential to the continued operation of the Debtor's business. In order to successfully reorganize and to continue to offer medical services to its patients, the Debtors require their businesses to continue uninterrupted, thereby generating profits the Debtors will use to pay their creditors.  The First Day Motions will also preserve the Debtors' bankruptcy estate and ensure the effective and efficient administration of

the bankruptcy estate.

The First Day Motions each seek expedited relief. The Debtors propose shortening the normal notice rights and procedures with respect to the First Day Motion to minimize delay and the risks associated therewith. Specifically, the Debtor requests that a hearing be set on the First Day Motions on **Tuesday, October 27, 2020 at  2:00 p.m.** (CST), at which the First Day Motions will be considered on an interim basis, and that objections to such interim relief be due by **Tuesday, October 27, 2020 at 11:00 a.m. (CST).** The Debtors further requests that a final hearing be set on the First Day Motions on or before <u>**November 7, 2020.**</u>

Debtors will be making every effort to notify all interested parties on Monday, October 26, 2020 by telephonic, e-mail, fax, overnight delivery, and/or hand delivery to extent Debtors have such contact information.

Absent the relief requested herein, parties in interest would be given at least fourteen (14) (and in some cases twenty-one (21)) days to assert objections to the relief requested in the First Day Motions.  The Debtors, however, must be able to continue their operations in the ordinary course of business during that period. The interim relief sought by the First Day Motions is designed to permit the Debtors to continue their operations, while still preserving the rights of parties in interest to object.

The Debtors have not previously sought an extension of any deadlines in this case.  Given the infancy of this case, the Debtors have not sought the consent of other parties in the interest to the relief requested herein.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Debtors respectfully request that the Court enter an order shortening the time for parties in interest to object to the interim relief sought in the First Day Motions, setting an expedited hearing on the First Day Motions, and granting such other relief as is just and proper.  A proposed order granting this Application attached hereto as **Exhibit A**.

Dated:  October 25, 2020         Respectfully submitted,

**RUBENSTEIN & PITTS, PLLC**

By: s/ Michael A. Rubenstein
Michael A. Rubenstein, OBA #7806
Leif Swedlow, OBA #17710
1503 E. 19th Street
Edmond, OK  73013
Telephone:  (405) 340-1900
Facsimile:   (405) 340-1001
mrubenstein@oklawpartners.com
lswedlow@oklawpartners.com

**AKERMAN LLP**

By:  s/ David W. Parham
David W. Parham
Texas Bar No. 15459500
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
*Pro Hac Vice Pending*

s/ Esther McKean
Esther McKean
Florida Bar No. 028124
420 S. Orange Ave., Suite 1200
Orlando, FL 32801
Telephone: (407) 423-4000
Facsimile: (407) 843-6610
esther.mckean@akerman.com
*Pro Hac Vice Pending*

s/ Catherine Kretzschmar
Catherine Kretzschmar
Florida Bar No. 85843
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Telephone: (407) 423-4000
Facsimile: (407) 843-6610
catherine.kretzschmar@akerman.com
*Pro Hac Vice Pending*

Proposed Attorneys for Debtors

55143656;1