## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In Re: | ) | Case No.: 20-13482 |
| | ) | Chapter 11 |
| RHA STROUD, INC., | ) | |
| Debtor. | ) | [Jointly Administered] |
| | ) | |

## FP GROUP'S MOTION TO DISMISS OR ABSTAIN
## AND NOTICE OF OPPORTUNITY FOR HEARING

### NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than 14 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.

Submitted by:

J. Clay Christensen (OBA #11789)
Jeffrey E. Tate (OBA # 17150)
Jonathan M. Miles (OBA #31152)
Brock Z. Pittman (OBA #32853)
**CHRISTENSEN LAW GROUP, P.L.L.C.**
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma 73116
Telephone: (405) 232-2020
Facsimile:  (405) 228-1113
Clay@christensenlawgroup.com
Jeffrey@christensenlawgroup.com
Jon@christensenlawgroup.com
Brock@christensenlawgroup.com

Eric D. Winston (CA Bar No. 202407 – *application for admission pro hac vice pending*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
ericwinston@quinnemanuel.com

*Attorneys for Creditors Rural Hospital Acquisition, LLC, First Physicians Realty Group, LLC, First Physicians Business Solutions, LLC, First Physicians Services, LLC, and First Physicians Resources, LLC*

Dated this 5th day of November 2020.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..............................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

    A.      The Purchase of Debtors and Issuance of the Notes .................................3

    B.      Management of the Hospitals and Debtors' Operations ...........................4

    C.      Secured Creditor and Landlord Seek Receiver in Oklahoma State Court ..............6

    D.      The State Court Approves Application for a Receiver ............................7

    E.      The Commencement of this Proceeding .................................................8

III.    ARGUMENT ...................................................................................................10

    A.      This Case Should Be Dismissed Because the Debtor Filed for Chapter 11 Bankruptcy in Bad Faith. ....................................................10

        1.      Debtors Effectively Each Have One Asset. ...............................11

        2.      Debtors Filed this Action to Evade a Receivership Order in State Court. ....................................................................11

        3.      These Cases Are Actually Two-Party Disputes. .......................13

        4.      Debtors Have No Ongoing Business or Employees. .................15

        5.      Debtors Lack the Possibility of Reorganization. ......................15

        6.      Dismissal, Rather than Conversion, Is Warranted Under § 1112. ............17

    B.      This Court Should Dismiss or Abstain Under 11 U.S.C. § 305 ..........................18

IV.     CONCLUSION ................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

Cases:

*In re Asanda Air II LLC*, 600 B.R. 714 (Bankr. N.D. Ga. 2019)............................................14

*In re Forest Hill Funeral Home & Mem'l Park*, 364 B.R. 808 (Bankr. E.D. Okla. 2007) ..................................................................................... 10, 11, 12-13, 17, 18, 19

*In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) .................16

*In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734 (6th Cir. 1994)..............................................10

*In re LJBV LTD,* 544 B.R. 401 (Bankr. N.D. Ill. 2016).....................................................12, 14

*In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) .............................................................................................14

*In re Muskogee Envtl. Conservation Co.*, 236 B.R. 57 (Bankr. N.D. Okla. 1999).................11

*In re Nursery Land Dev., Inc.*, 91 F.3d 1414 (10th Cir. 1996) ................................................11

*In re On the Ocean, Inc.*, No. 16-16204-BKC-RBR, 2016 WL 8539791 (Bankr. S.D. Fla. June 6, 2016).............................................................................................................................15

*In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76 (Bankr. W.D. Pa. 1988) ..............................19

*In re Packard Square*, LLC, 575 B.R. 768 (Bankr. E.D. Mich. 2017)...................................18

*In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001), *aff'd,* 269 B.R. 225 (D. Colo. 2001) ......20

Statutes

11 U.S.C. § 305...........................................................................................................................1

11 U.S.C. § 305(a)(1)................................................................................................................18

11 U.S.C. § 1112..................................................................................................................1, 19

11 U.S.C. § 1112(b)(1) .......................................................................................................10, 17

Other

2 COLLIER ON BANKRUPTCY ¶ 305.01 .......................................................................................18

Rural Hospital Acquisition, LLC ("RH Acquisition"), First Physicians Realty Group, LLC ("FP Realty"), First Physicians Business Solutions, LLC ("FP Business"), First Physicians Services, LLC ("FP Services"), and First Physicians Resources, LLC ("FP Resources") (collectively with RH Acquisition, FP Realty, FP Business, and FP Services, the "FP Group") respectfully submit this Motion pursuant to 11 U.S.C. §§ 305 and 1112 to dismiss or abstain from the Chapter 11 bankruptcy cases of RHA Stroud, Inc. and RHA Anadarko, Inc. (collectively, the "Debtors"). The FP Group may further supplement this Motion through evidence obtained in discovery, which may be presented to the Court at the hearing on this Motion.

## I.     INTRODUCTION

These cases should have never been commenced, no emergency or exigent circumstances required the Debtors to seek bankruptcy protection, and, because the Debtors did file these cases without any legitimate purpose, the Debtors' actions have already placed at risk the operations of two critical care hospitals in Oklahoma, at a time when hospitals in the state are nearing capacity. Bankruptcy does nothing to assist the Debtors and their estates, but was commenced solely to benefit the principal of Debtors' sole shareholder, One Cura Wellness, Inc. ("One Cura"), who for nearly two years has improperly invoiced the Debtors about $1.5 million annually, and faces the likelihood of losing this cash stream.

The Debtors filed these cases because they had already litigated and lost in Oklahoma state court, which on September 24, 2020 issued a written order directing the appointment of David Rhoades as a receiver for each Debtor. Because the Debtors refused to accept a receiver order that would actually give the receiver power, RH Acquisition and FP Realty requested the state court to consider a proper form of order, and the state court had set a hearing on November 4 to determine which form of a receivership order to enter. The Debtors no doubt understood the Debtors' sole

1

shareholder was about to lose control, and thus directed these filings to stave off the appointment of the receiver.

Each Debtor owns a critical access hospital in Oklahoma; FP Business manages the hospitals, supported by FP Services and FP Resources. Neither Debtor employs any of the doctors, nurses, or staff at the hospital. The Debtors do not arrange for any of the myriad of goods and services the hospitals require, and they do not handle invoicing of Medicare and other payors. Other than the FP Group, the Debtors have virtually no third-party creditors.[1] **In fact, but for the mid-month filing of these cases, the Debtors' non-insider, third-party vendors were in line to be paid and would have been paid in the normal course of business.** These cases are classic examples of a two-party dispute already pending in state court: the Debtors (and their parent company One Cura) on the one hand, and the FP Group on the other.

Further, as previously adjudicated by the state court, the Debtors are hopelessly insolvent. And because all of their assets secure obligations owed to RH Acquisition, each day the Debtors become more and more administratively insolvent. They have no hope of reorganizing—there is no conceivable way for them to confirm a plan of reorganization.

And the commencement of these cases immediately caused disruption—employees at the hospitals questioned whether they would continue to have jobs, suppliers have refused to continue serving the hospitals or required more onerous payment terms, and FP Group, not the Debtors, have been left trying to manage the fallout without impacting patient care. That the Debtors, under the thumb of their shareholder, made no effort to avoid disruptions at the hospitals before—or even

---

[1] The only other (disputed) creditors of any note are the Debtors' shareholder and the law firms the shareholder has caused the Debtors to employ to litigate against the FP Group. There may also be third-party vendors, who would have been paid in the ordinary course of business, that were caught due to the mid-month filing.

immediately after—they filed these Chapter 11 cases is telling.  The Debtors do not care about the impact of the filings on hospital operations because they rely on FP Group entities to coordinate with suppliers, vendors, physicians and other employees, and to ensure the continued smooth operation of the hospitals and uninterrupted patient care.

The facts demonstrate that the Debtors commenced these cases for the sole purpose of evading the Oklahoma state court order mandating the appointment of a receiver, in a context where there is no valid Chapter 11 purpose.  This is an abuse of the jurisdiction of the Court.  Again and again, bankruptcy courts have dismissed bad faith bankruptcy petitions filed by debtors in an attempt to evade state court receivership orders.  The totality of the circumstances demonstrate that the Debtors filed for bankruptcy in bad faith and that it is in the best interest of all parties to dismiss this case in favor of the ongoing state court proceedings where the state court has directed the appointment of a receiver.

## II.        FACTUAL BACKGROUND

### A.        The Purchase of Debtors and Issuance of the Notes

The Debtors own two critical access hospitals located in Stroud and Anadarko, Oklahoma, respectively.  RH Acquisition originally owned both Debtors.  On April 1, 2011, RH Acquisition sold the Debtors to Charles Eldridge via a Stock Purchase Agreement through which Mr. Eldridge purchased all membership interests in the Debtors.  Mr. Eldridge subsequently transferred those interests to One Cura, of which he is Chairman and CEO.  *See* Oct. 25, 2020 Mot. re Cash Collateral (Dkt. 4)[2] ¶ 19; Oct. 25, 2020 Decl. of Charles M. Eldridge (Dkt. 6) ¶ 3.

To finance the purchase, Mr. Eldridge caused each Debtor to issue a promissory note, as amended, to RH Acquisition (the "Notes").  The aggregate amount of the amended notes was

---

[2]   Unless otherwise noted, all docket number citations are to the lead case, No. 5:20-bk-13482.

$14,025,712.10.  The Notes obligate the Debtors to pay quarterly interest, as well as to ultimately pay the principal amounts.  Exs. B (Dkt. 4-2 (Stroud Note)) & C (Dkt. 4-3 (Anadarko Note)) to Oct. 25, 2020 Mot. re Cash Collateral, at § 1.  The Debtors secured the Notes by granting RH Acquisition a security interest in substantially all the assets of the Debtors, including all personal property, permits, licenses, accounts receivable, and operating accounts.  Exs. D (Dkt. 4-4 (Stroud Security Agreement)) & E (Dkt. 4-6 (Anadarko Security Agreement)) to Oct. 25, 2020 Mot. re Cash Collateral.  RH Acquisition perfected its security interest in the Debtors in 2018.  *See* Ex. F (Dkt. 4-5) to Oct. 25, 2020 Mot. re Cash Collateral.  As of the Petition Date, the Debtors collectively owed $15,558,066 on account of the Notes.

The Debtors do not own the real property where the hospitals are located, but such real property at all times was owned by FP Realty.  Thus, at the same time the Debtors issued the Notes, FP Realty entered into a lease ("Lease") with the Debtors, leasing to the Debtors the real estate and buildings where the Debtors operated the hospitals.  The Lease obligates the Debtors to pay rent to FP Realty.  As of the Petition Date, the Debtors collectively owed $11,274,038 on account of the Lease.

Neither Debtor has had any infrastructure to manage the hospitals.  Instead, each Debtor entered into certain agreements with FP Business, FP Resources, and FP Services under which these entities would provide to the hospitals management and support services, personnel, and other ancillary services like information technology.

### B.    Management of the Hospitals and Debtors' Operations

FP Business has managed both hospitals under its agreements with the Debtors for over nine years, supported by FP Services and FP Resources.  All doctors, nurses, staff, and other employees performing work and other services at the hospitals are employed by entities within the FP Group.  As counsel for the Debtors recently stipulated during the state court evidentiary hearing

on RH Acquisition's and FP Realty's application for a receiver,[3] FP Business's management has been "superb." Following that hearing, Judge Ashwood of the District Court of Lincoln County found that "[t]here is no dispute that the hospitals are running smoothly and efficiently." Ex. 1 (Sept. 24, 2020 Order in State Action) at 2.

As part of its management functions, FP Business processes payments on behalf of the hospitals. FP Business prioritizes the payment of direct costs and costs owed to third-party vendors, then allocates the remaining amounts to management fees and related fees to cover the costs of doctors, nurses, emergency rooms, and other staff and services provided by FP group. In the ordinary course of business, FP Business ensures all other non-insider third-party vendors and employees are paid in full before the FP Group receives any payment. Any unpaid non-insider vendor would have been paid in full absent the filing of this case.

The Debtors do not earn, and have never earned, enough revenue to pay in full the amounts owed to the FP Group for services provided, for rent under the Lease, and for interest on the Notes.[4] One Cura has a single employee, and the Debtors have none. Mr. Eldridge does not reside in Oklahoma, but in California, and rarely visits the hospitals. In fact, Mr. Eldridge testified in the state court hearing in September that he had not even visited the hospitals in 2020, leaving the hospitals to be managed by FP Group.

Despite Mr. Eldridge very rarely visiting the hospitals in the past nine years, for years the Debtors paid One Cura hundreds of thousands of dollars a year, primarily for Mr. Eldridge to approve payments by the FP Group to vendors, sign contracts on the hospitals' behalf, and to sign

---

[3] Hereinafter the "Receivership Hearing," and discussed further *infra*. The FP Group understands that the transcript of the Receivership Hearing is not yet available.

[4] The Debtors never directed FP Business to handle payments on behalf of the hospitals in any manner other than the approach FP Business had taken.

the cost reports that are prepared by accountants for the hospitals and submitted to the Centers for Medicare and Medicaid Services ("CMS").  In late 2018, Mr. Eldridge caused the Debtors to increase the monthly amount One Cura would receive from $12,500 per hospital ($25,000.00 total) per month to $100,000 per hospital ($200,000.00 total) per month, meaning that One Cura would receive $2.4 million annually,[5] even though neither it nor Mr. Eldridge were providing any new services and the debts owing to the FP Group were mounting.

For years, FP Business had been deferring full payment of its management fees and other amounts due to the FP Group, which helped the hospitals to stay current with all other vendors. However, the relationship between the Debtors and One Cura, on the one hand, and the FP Group, on the other, began to sour once One Cura improperly inflated the payments it received for no valid reason.  In late 2019, the parties attempted to negotiate new agreements to govern their relationship (with One Cura demanding even more money for itself), but negotiations broke down. RH Acquisition and FP Realty realized the Debtors never intended to pay back the amounts owed on the Notes and Lease, and decided that a receiver was needed.

### C.    Secured Creditor and Landlord Seek Receiver in Oklahoma State Court

On February 24, 2020, RH Acquisition and FP Realty filed a petition in the District Court of Lincoln County, State of Oklahoma, Case No. CJ-20-31 (the "State Action") against the Debtors seeking, among other things, the appointment of a receiver to take the Debtors into his or her possession and control.  *See generally* Ex. 2 (Petition in the State Action); *see also* Ex. 3 (RH Acquisition Em. App. for Receiver) at 10-11; Ex. 4 (FP Realty Em. App. for Receiver) at 9.

Once FP Realty and RH Acquisition determined that it was necessary to seek the appointment of a receiver, FP Business decided to hold in abeyance payment of One Cura's fees,

---

[5]   That amount was later reduced to $62,500.00 per hospital per month, for a total of $125,000.00.

6

as well as fees for the Debtors' counsel. This is because FP Business believed that the decision of whether to pay those fees should be decided by the receiver, if one was appointed. The Receivership Hearing was ultimately delayed for six months for reasons related to the COVID-19 pandemic. As of the Petition Date, the FP Group believes that One Cura will claim it is owed $750,000 and that one of the firms the Debtors engaged, Akerman, will claim it is owed $1,314,572.44, based on what was filed in state court. Other than these amounts and what was owed to the FP Group, the Debtors should have had virtually no creditors as of the Petition Date, except those caught by the middle of the month filing that would have been paid in the normal course of business.

### D.    The State Court Approves Application for a Receiver

Following briefing by the parties, Judge Ashwood held an evidentiary hearing on September 14 regarding the application for a receiver. That Receivership Hearing included testimony from six witnesses (including expert witnesses), arguments from counsel, and extended from the morning well into the evening.

On September 24, Judge Ashwood issued an order finding that the Debtors were indisputably insolvent, granting the application for a receiver, and designating David Rhoades[6] as the receiver. *See* Ex. 1 at 2-3. Judge Ashwood directed the parties to present an agreed order formally appointing Mr. Rhoades.

Under the form of the order proposed by RH Acquisition and FP Realty (based on input from and with the approval of the receiver), the receiver would have access to the Debtors' financial information and any other information available to the Debtors. *See* Ex. 6 (App. for Hr'g

---

[6]  Mr. Rhoades' curriculum vitae is attached hereto as Exhibit 5. Mr. Rhoades has extensive experience as a receiver, which includes acting as receiver for a rural hospital (Ex. 5 at 4).

on Agreed Order Appointing Receiver) at Ex. 1 ¶¶ 2, 7-8. By contrast, the Debtors' comments to that proposed order would have essentially stripped the receiver of authority, including the authority authorized under applicable Oklahoma statutes that were the basis for the receiver's appointment. *See id.* at Ex. 7. A hearing was set for November 4 regarding the order.

      **E.**      <u>**The Commencement of this Proceeding**</u>

Without any advance notice to the FP Group, the Debtors commenced these Chapter 11 proceedings on October 25—a Sunday. In other words, even though the Debtors own hospitals that are currently providing critical care to patients in the face of the ongoing COVID-19 pandemic, the Debtors made no effort to guard against disruption at the hospitals, even basic steps such as preparing press releases or a "Frequently Asked Question" sheet to distribute to employees and vendors. Obviously, the Debtors did not contact the FP Group to discuss a filing, and thus made no effort to coordinate the use of cash collateral, ensure that any critical vendors were taken care of, and ensure that there would be no disruption to cash management. The Debtors' "first day" filings reflect the poor planning. Each Debtor filed only three motions—a joint administration motion, a cash management motion, and a motion authorizing cash collateral. The cash management motion provided little detail, and the cash collateral motion was inadequate—lacking any budget or description of how Debtors could provide adequate protection to RH Acquisition.[7]

And the Debtors' mismanagement of their filings has already caused confusion with employees and vendors. Employees came to work, having learned of the Debtors' bankruptcy filing, unsure of whether they still had jobs. Certain vendors, including the vendors who provide the hospitals' medical supplies and pharmaceuticals, have contacted First Physicians to

---

[7] This Court granted use of cash collateral only as a "status quo", which RH Acquisition consented to (and the Debtors initially resisted) in order to avoid disruptions at the hospitals.

communicate that in light of the Debtors' Chapter 11 petition, those vendors will not deliver goods and services unless those vendors are placed on deposit, or set up with an EFT to be paid upon shipment. However, because the Debtors have restricted First Physicians' prior authority with respect to the operating accounts historically used to process payments to vendors (in contravention of this Court's direction that the status quo of cash flow is to be maintained), First Physicians is unable to quickly comply with these vendors' requests.

Despite the poor planning, it is clear that the Debtors were *planning* for their secret and disruptive filing. They admitted at the first day hearing that the week before the filing they had reached out to Wells Fargo bank concerning opening debtor in possession bank accounts. And the FP Group understands that between a week and two weeks before the filing, an attorney with Akerman had contacted the Office of the United States Trustee to indicate a chapter 11 filing was imminent.[8] Debtors' own filings reflect that they had been planning to file their petitions for some time before they actually did so—again, without any warning to or attempt to coordinate with anyone to safeguard the patients. Debtors decided to petition for Chapter 11 relief on October 14—11 days before they commenced these proceedings. *See* Dkt. 1 at ECF 12-15.

In the State Action, RH Acquisition asserted that RHA Stroud owes it at least $8,097,684.06 and that RHA Anadarko owes it at least $6,891,990.60 under their respective Notes, which debt is secured by substantially all the assets of the Debtors. Ex. 2. FP Realty alleged that the Debtors jointly owe $10,324,000. *Id.* At the Receivership Hearing, the Debtors admitted that they owe the amounts due under the Notes and the Lease. The Debtors also owe millions more to

---

[8]    Although Debtors commenced these proceedings over a week ago and have retained counsel (both Akerman and Rubenstein & Pitts, PLLC have appeared on Debtors' behalf), they have yet to file a motion to authorize employment of bankruptcy counsel. The FP Group believes that at least Akerman cannot be employed under Bankruptcy Code section 327 and intends to oppose any such employment application.

other FP Group entities.  Because FP Business allocated payments such that the hospitals' third-party vendors were paid in full, the FP Group believes that the FP Group are the Debtors' only significant creditors of these insolvent estates.

## III.    <u>ARGUMENT</u>

The Court should dismiss these cases for cause under Bankruptcy Code Section 1112 because the totality of the circumstances demonstrate that the Debtors filed for bankruptcy in bad faith.  The Court can also dismiss or abstain from hearing these cases under Bankruptcy Code Section 305 because it is in the best interests of all parties for each case to be returned to the ongoing state court proceedings where a receiver has already been appointed.

### A.    <u>This Case Should Be Dismissed Because the Debtors Filed for Chapter 11 Bankruptcy in Bad Faith.</u>

Bankruptcy Code Section 1112 permits this Court to dismiss the cases for cause.  11 U.S.C. § 1112(b)(1) ("[T]he court shall convert a case under [Chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause . . . .").  Cause exits when a debtor has filed a Chapter 11 bankruptcy case in bad faith.  *See, e.g.*, *In re Forest Hill Funeral Home & Mem'l Park*, 364 B.R. 808, 820 (Bankr. E.D. Okla. 2007) (" . . . [C]ause exists under this section when a bankruptcy case was filed in bad faith.").

Whether a debtor has filed in bad faith is a "discretionary determination that turns on the bankruptcy court's evaluation of a multitude of factors."  *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 738 (6th Cir. 1994).  Courts have developed several "non-exclusive factors" for evaluating good faith in filing a bankruptcy case, including whether:

> (1) the debtor has one asset; (2) the prepetition conduct of the debtor has been improper;  (3) there are only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot

10

afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization.

*Forest Hill*, 364 B.R. at 820 (internal quotation marks omitted); *see also In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996) (affirming finding of bad faith based on similar factors). Here, virtually all of the relevant factors are satisfied, and the totality of the circumstances demonstrate that Debtors filed for bankruptcy in bad faith.

             1.    <u>Debtors Effectively Each Have One Asset.</u>

Each Debtor's case is effectively a single-asset case. Each Debtor owns a hospital, but the hospitals are managed by their management company, FP Business, not by the Debtors. The Debtors have no employees. Each Debtor is owned by One Cura, which in turn has a single employee. *See In re Muskogee Envtl. Conservation Co.*, 236 B.R. 57, 66, 69 (Bankr. N.D. Okla. 1999) (dismissing case for bad faith where the case "center[ed] around a single asset"); *Nursery Land*, 91 F.3d at 1416 (affirming finding of bad faith where debtor had "only one asset").

             2.    <u>Debtors Filed this Action to Evade a Receivership Order in State Court.</u>

The Debtors did not file their petitions to seek reorganization or a fresh start. Instead, they filed their petitions to evade the receivership order entered on September 24, 2020 in the State Action. One Cura, which controls the Debtors, desperately does not want to see Mr. Rhoades appointed as a receiver and, faced with a November 4 hearing where the court would enter a form of receivership order setting out Mr. Rhoades's authority, instead ran to this Court.

RH Acquisition (the only secured creditor of the Debtors) and FP Realty (the lessor of the premises on which each Debtor operates) filed the State Action in Oklahoma state court, seeking the appointment of a receiver, after it became clear that Debtors never intended to pay down their debts and terms for new extended contracts could not be agreed upon, as One Cura wanted more

money.[9]  On September 24, 2020, the Oklahoma state court granted the application for a receiver and directed the parties to present the court with an agreed order regarding the receiver's duties and bond.  RH Acquisition and FP Realty could not get Debtors to agree to reasonable language for the receivership order.  Consequently, on October 14, 2020, RH Acquisition and FP Realty filed an Application for Hearing on Agreed Order Appointing Receiver (Ex. 6), which was set for hearing on November 4, 2020.

On the heels of the parties' application for a hearing regarding the duties of the designated receiver, Debtors filed their petitions for Chapter 11 bankruptcy.  The bad faith of this filing is apparent on its face, as Debtors filed their petition for bankruptcy approximately one month after the state court granted the application for a receiver and ten days before the scheduled hearing to determine the duties and bond of the receiver.  In other words, the Debtors took their chances in the receivership hearing, lost, and then decided to run to bankruptcy court.

Repeatedly, bankruptcy courts have dismissed petitions for cause based on a finding of bad faith when they are filed in reaction to pending or entered receivership orders in companion state court proceedings.  *See, e.g.*, *Forest Hill*, 364 B.R. at 822, 825 (finding bad faith where the bankruptcy filing allowed debtors "to escape the receivership hearing in [state court]" and dismissing case); *In re LJBV LTD*, 544 B.R. 401, 405-07 (Bankr. N.D. Ill. 2016) (dismissing for cause where "petition effectively allow[ed debtor] to evade" state court order appointing receiver).

*In re Forest Hill Funeral Home* is instructive.  In that case, a complaint had been filed against Forest Hill Funeral Home in Tennessee Chancery Court seeking the appointment of a receiver.  *Forest Hill*, 364 B.R. at 815.  The Chancery Court set the hearing on the application for

---

[9] The new contracts being proposed decreased the fees paid to the FP Group, as the FP Group had completed the turnaround of the hospitals. Rather than decreasing the fees, Once Cura simply wanted more money. FP Group would not agree.

a receiver for January 23, 2007. *Id*. On January 22, 2007—the day before the hearing regarding the receiver—Forest Hill filed a Chapter 11 petition. *Id*. at 816. The United States Bankruptcy Court for the Eastern District of Oklahoma found that the petition had been filed in bad faith, including because the filing had allowed Forest Hill to "escape the receivership hearing," and dismissed the case. *Id.* at 822, 825.

The facts here are even stronger because the Debtors here filed the cases *after* the court had already ordered the appointment of a receiver, and in order to evade the hearing in state court that was scheduled for November 4, 2020. This is an improper purpose for a bankruptcy petition, and this Court should find that Debtors filed their petitions in bad faith, and dismiss these cases.

The Debtors' precipitous filing has caused significant cost and disruption to the operations of the hospitals, as Debtors did not provide warning or advance notice of their plans to file for bankruptcy to any of the hospitals' management, staff, or critical vendors (despite having decided to seek Chapter 11 relief at least 11 days before filing their petitions). Further administration of this case through bankruptcy proceedings will incur more unnecessary costs, and it will cause delay and disruption to the services the hospitals provide to their patients in the rural communities of Stroud and Anadarko, Oklahoma. This is precisely what RH Acquisition and FP Realty sought to avoid with the appointment of a receiver. This Court should dismiss this case in favor of the ongoing state court proceedings and state-designated receiver.

3.    These Cases Are Actually Two-Party Disputes.

The Debtors have virtually no unsecured creditors. Indeed, essentially all creditors in this case are the FP Group—making this a two-party dispute. Debtors owe RH Acquisition, the single secured creditor in this case, principal and interest due under the Notes with which the Debtors purchased the hospitals in April 2011. Substantially all of the Debtors' additional debt comes from

agreements they entered into with affiliates of RH Acquisition, including the Lease with FP Realty, and management and other service agreements with FP Business, FP Services, and FP Resources. To the extent that the Debtors have any other unsecured creditors, these are solely the result of (1) payments to insiders being held in abeyance after RH Acquisition and FP Realty applied for a receiver, and (2) the institution of these proceedings preventing payments to vendors whose invoices had not yet been paid as of the petition date. The non-insider vendors would have been paid in the ordinary course of business absent this filing.

Chapter 11 bankruptcy is not intended to resolve disputes between two parties, or a very small number of creditors, that could just as easily be handled in state court. "Bankruptcy is a *collective remedy*, with the original purpose—which continues to this day—to address the needs and concerns of creditors with competing demands to debtors' limited assets, and with the understandable desire that the debtor's assets not go to the swiftest, or the most aggressive of them." *In re Murray*, 543 B.R. 484, 494-95 (Bankr. S.D.N.Y. 2016) (emphasis in original) (citations omitted), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018). Here, the Debtors are attempting to use bankruptcy proceedings to resolve a dispute with a single group of creditors who do not have any competing demands. Numerous bankruptcy courts have found bad faith and dismissed where a case amounted to a two-party dispute. *See, e.g.*, *In re Asanda Air II LLC*, 600 B.R. 714, 722-23 (Bankr. N.D. Ga. 2019) (finding that fact that "reorganization essentially involves the resolution of a two-party dispute" was one of several "indicia of bad faith" and that dismissal was justified; *LJBV LTD*, 544 B.R. at 406 (finding cause for dismissal established where the case "involve[d] essentially the resolution of a two-party dispute" and "was filed only to benefit from the automatic stay to evade state court orders"). This Court should find the same.

14

### 4.     Debtors Have No Ongoing Business or Employees.

Next, it is readily apparent that Debtors filed for Chapter 11 bankruptcy without a genuine reorganization purpose because Debtors have no ongoing business or employees.  Debtors own the hospitals, but they do not manage the hospitals, hire the hospitals' staff, engage with the hospitals' vendors, or process payment of the hospitals' expenses.  Debtors are owned and controlled by One Cura, which itself only employs one individual (Charles Eldridge) as the Chairman and CEO.  The physical hospital buildings are leased to Debtors by FP Realty, the hospitals' staff and contractors are hired and trained by FP Services and FP Resources, and the hospitals' operations are managed by FP Business—these entities are the *creditors* in this action.

Accordingly, Debtors have no business to reorganize, and no employees whose jobs would be saved through a process of reorganization.  Bankruptcy courts have found bad faith and dismissed bankruptcy petitions for cause when the debtors have no employees or business to reorganize.  *See, e.g.*, *In re On the Ocean, Inc.*, No. 16-16204-BKC-RBR, 2016 WL 8539791, at *3 (Bankr. S.D. Fla. June 6, 2016) (finding the fact that "[t]he Debtor has no employees and uses only 1099 independent contractors, so reorganizing the business to save jobs is not a consideration in this case" indicative of bad faith).  The Court should find the same here.

### 5.     Debtors Lack the Possibility of Reorganization.

Finally, the Court should dismiss this case for cause of bad faith because Debtors have no possibility of reorganization.  Debtors are indisputably insolvent and lack sufficient revenue or unencumbered assets to pay their debts.  All of the Debtors' assets are encumbered, and every day the Debtors incur administrative expenses that they cannot pay without using RH Acquisition's cash collateral, which cannot be repaid with any unencumbered assets.

The FP Group will not ever vote in favor of a plan where One Cura remains in control of the Debtors. Negotiations between the Debtors and the FP Group broke down long ago. The Debtors began demanding payment of about $4,000,000 annually to Debtors' parent, One Cura, even though One Cura does not provide any goods or increased services to the hospitals' operations. The FP Group came to the realization that Debtors never intended to pay their debts, and further, that One Cura's ownership was jeopardizing the operations of the hospitals and the critical services the hospitals provide to their communities. Accordingly, RH Acquisition and FP Realty filed a petition in Oklahoma state court for a receiver to take the Debtors into his or her possession and control.

There is *no possibility* that the FP Group will agree to a plan for reorganization from the Debtors, and because the FP Group are the only substantial creditors in this action, there is no possibility of reorganization. *See In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 299-300, 302-03 (Bankr. D. Del. 2011) (dismissing case for cause of bad faith and finding no possibility of reorganization without the consent of debtor's only creditor to a plan).

Moreover, Debtors have admitted that they cannot pay the monthly amounts owed to FP Realty, RH Acquisition, or others in the FP Group—meaning that the Debtors' estates will quickly become administratively insolvent (if they are not already). The administrative insolvency of Debtors is further evidence that Debtors have no possibility of reorganization. *See JER*, 461 B.R. at 306 (allowing case "to remain in chapter 11 when it is administratively insolvent is not appropriate"). Indeed, this bankruptcy petition has not, and will not, add to Debtors' estate or provide it with more value. On the contrary, Debtors' bankruptcy filing—on the heels of a receivership order from state court—has only reduced the estate's value and it has caused considerable disruption to the operations of the hospitals.

16

In short, the lack of possibility of reorganization (*i.e.*, the objective futility of these actions) is even more evidence that Debtors filed these petitions in bad faith. This—combined with the fact that Debtors filed these petitions in order to evade a state court order, that Debtors have only a few creditors (none of which have competing interests), and that Debtors have no employees or ongoing business to reorganize—makes it readily apparent that Debtors filed these actions in bad faith and without a valid bankruptcy purpose. Debtors have abused the jurisdiction of this Court.

6.    Dismissal, Rather than Conversion, Is Warranted Under § 1112.

Once the Court finds that Debtors filed in bad faith, Bankruptcy Code section 1112 mandates that the Court must determine whether conversion or dismissal is in "the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b)(1); *Forest Hill*, 364 B.R. at 822. Here, dismissal is warranted.

*First*, converting this case under Chapter 7 and liquidating Debtors' assets may cause substantial disruption to the operations of the hospitals and harm the community and patients who rely on the hospitals' services. A Chapter 7 case would result in the appointment of a trustee who will be charged with liquidating the Debtors' assets. There is no guarantee that a trustee appointed will be able to quickly take control to avoid disruptions. No party has an interest in disrupting the hospitals' operations or putting anyone's lives in danger.

*Second*, the state court has already granted the application for appointment of a receiver, who is best able to protect the interests of all parties, especially those of the Debtors. The receiver is there to take the Debtors into his possession and control and ensure—while protecting the creditors—that the operations of the hospitals are not jeopardized or disrupted. The state court and the receiver will also be more equipped to efficiently manage the Debtors given the special nature of the hospitals' business and the criticality of its services to its patients in the rural

17

communities of Oklahoma. Accordingly, the Court should dismiss this case for cause of bad faith to "avoid any needless confusion or doubt about the ability of the Receiver and the state court in the receivership case to carry on, as if no bankruptcy had been filed." *In re Packard Square*, LLC, 575 B.R. 768, 783 (Bankr. E.D. Mich. 2017).

**B.**    **This Court Should Dismiss or Abstain Under 11 U.S.C. § 305.**

This Court can also dismiss or abstain pursuant to Bankruptcy Code section 305(a)(1), which provides that: "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). *See* 2 COLLIER ON BANKRUPTCY ¶ 305.01 (Section 305 "grants significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11."). Courts consider several non-exclusive factors to determine whether dismissal or abstention under Section 305 is in the best interest of the creditors and debtors, including:

> (1) the motivation of the parties in seeking bankruptcy jurisdiction; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) the economy and efficiency of administration; and (4) the prejudice of the parties.

*Forest Hill*, 364 B.R. at 824.

This case presents such an instance for dismissal or abstention, as (1) Debtors filed for bankruptcy in order to evade a state court order for a receivership, (2) a receiver has been designated to protect the interests of both parties, (3) the receiver will provide a means for economic and efficient administration of the estate without rendering Debtors administratively insolvent, and provide efficient administration, and (4) continued administration of these cases in bankruptcy court could not only prejudice all parties in these cases, but also have disastrous consequences on the hospitals' patients and local communities.

Similar to bad faith analyses under Section 1112, as discussed above, bankruptcy courts consistently find that dismissal or abstention is appropriate under Section 305 where there are pending or ongoing state court receivership proceedings. *See, e.g.*, *Forest Hill*, 364 B.R. at 824-25 (finding abstention proper where the state court and a state receiver would be better positioned to apply state law than the bankruptcy court); *In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988) (dismissing bankruptcy case of a personal care facility under Section 305 where the case "was already under the control of the receiver, appointed and monitored by the learned state court judges"). Here, the Debtors did not file for bankruptcy to seek reorganization or a fresh start but to evade the receivership order from the state court. The receiver was appointed precisely for the purpose of protecting the parties' interests. The Court should dismiss or abstain from hearing this case.

Further, there is a mechanism in place already to decide whether, and in what manner, to manage and administer the Debtors, and to ensure that the interests of all parties are protected. *See, e.g.*, *Forest Hill*, 364 B.R. at 825 (observing that state court receiver could administer debtor's properties and determine payments to creditors).

In addition, the Debtors are on the verge of becoming administratively insolvent, as they have already admitted they cannot pay the monthly amounts owed to the FP Group. Debtors will not be able to afford the additional layer of expense these bankruptcy proceedings will require, including the costs of specialized bankruptcy counsel and compensation for the Chapter 11 trustee for the administration of the estate. To the extent Debtors incur these costs without becoming administratively insolvent, the assets available and owed to the FP Group will be diminished.

Finally, the facts of this case demonstrate that it is in the best interest of all parties to dismiss or abstain this case in favor of the ongoing state court proceedings. Neither party would

be prejudiced by dismissal or abstention—as is demonstrated by the fact that the state court and receiver are suitable mechanisms to protect the interests of all parties in this case.  *See In re Spade*, 258 B.R. 221, 235-36 (Bankr. D. Colo. 2001), *aff'd,* 269 B.R. 225 (D. Colo. 2001) (finding state court provided a forum for adequate resolution and would be more efficient and economical to resolve a two-party dispute).  However, the parties would be prejudiced by the continuation of this bankruptcy case.  Chapter 11 bankruptcy is costly, and at this stage in the parties' relationship, it would be far more efficient and economical to rely on the state court receiver to protect the secured assets of the Debtors and enable the hospitals to continue operating and servicing their communities without interruption or disarray that might otherwise be caused through Chapter 11 reorganization.  Debtors' petitions to file bankruptcy under Chapter 11 have thus far only reduced the value of the Debtors' estate, and risk significantly disrupting the services and care the hospitals provide to their patients.  The Court should dismiss or abstain from hearing this action before the parties are prejudiced further.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the FP Group requests that the Court dismiss this case for cause under Bankruptcy Code sections 1112 and 305, or abstain from hearing this case in favor of the ongoing state court proceedings under Bankruptcy Code section 305.

November 5, 2020

Respectfully submitted,

By: s/ *J. Clay Christensen*_____
J. Clay Christensen (OBA #11789)
Jeffrey E. Tate (OBA # 17150)
Jonathan M. Miles (OBA #31152)
Brock Z. Pittman (OBA #32853)
**CHRISTENSEN LAW GROUP, P.L.L.C.**
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma 73116
Telephone: (405) 232-2020
Facsimile:  (405) 228-1113
Clay@christensenlawgroup.com
Jeffrey@christensenlawgroup.com
Jon@christensenlawgroup.com
Brock@christensenlawgroup.com

Eric D. Winston (CA Bar No. 202407 – *application for admission pro hac vice pending*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
ericwinston@quinnemanuel.com

*Attorneys for Creditors Rural Hospital Acquisition, LLC, First Physicians Realty Group, LLC, First Physicians Business Solutions, LLC, First Physicians Services, LLC, and First Physicians Resources, LLC*

## CERTIFICATE OF SERVICE

This shall certify that on this 5th day of November, 2020, I electronically transmitted the foregoing document to the Court Clerk using the CM/ECF System and transmittal of a Notice of Electronic Filing to the counsel registered for ECF in this case.  This further certifies that a copy of the foregoing document was served on all parties listed below and to all parties listed on the matrix attached hereto.

RHA Anadarko, Inc.
1002 E. Central Blvd.
Anadarko, OK 73005-4405

Airgas USA, LLC
259 N. Radnor-Chester Road
Suite 100
Wayne, PA 19087-5240

Elaine's Transportation Company
3717 Vickie Drive
Oklahoma City, OK 73115-4345

Empire Paper Company
2708 Central Fwy E
Wichita Falls, TX 76301-8099

Henry Schein
Walter Siegel VP AMD Gen Counsel
135 Duryea Rd.
Melville, NY 11747-3834

Henry Schein
Box 371952
Pittsburgh, PA 15250-7952

Keystone Solutions, Inc.
6901 Shawnee Misskion Pkwy #215
Mission, KS 66202-4005

McKesson Medical Surgical, Inc.
6555 State Hwy 161
Irving, TX 75039-2402

McKesson Medical Surgical, Inc.
c/o Corporation Service Company
100 Shockoe Slip FL 2
Richmond, VA 23219-4100

McKesson Medical Surgical, Inc.
Lisa Wong, GC Corp. Compliance
Officer
9954 Maryland Drive, Suite 400
Richmond, VA 23233

Medline Industries, Inc.
3 Lakes Dr.
Northfield, IL 60093-2753

Medline Industries, Inc.
Alex Liberman, GC
Legal Dept.
One Medline Place
Mundelein, IL 60060-4485

Medline Industries, Inc.
Attn: Anne Kisha
One Medline Pl.
Mundelein, IL 60060-4486

Medtronic USA
710 Medtronic Parkway
Minneapolis, MN 55432-5604

Medtronic USA
c/o Corporation Service Company
2345 Rice Street, Suite 230
Roseville, MN 55113-3769

Smith & Son Building Centers Inc.
117 SE 2nd St.
Anadarko, OK 73005-3415

Southern Plains Medical Center Inc.
2222 W. Iowa Ave.
Chickasha, OK 73018-2738

Southern Plains Medical Center Inc.
625 Wildmeadow Drive
Edmond, OK 73003-3034

Stability Biologics
2026 Fransworth Dr.
Nashville, TN 37205-2700

Stryker Capital
c/o Jennifer Monique Cotton
6151 West Century Blvd., Ste. 906
Los Angeles, CA 90045-5310

Stryker Capital
CT Lien Solution
P.O. Box 29071
Glendale, CA 91209-9071

US Foodservice
7950 Spence Road
Fairburn, GA 30213-2907

US Foodservice
Attn: Kristin Coleman
9399 West Higgins Road, Ste. 500
Rosemond, IL 60018-4992

/s/ *J. Clay Christensen*
J. Clay Christensen

Label Matrix for local noticing
1087-5
Case 20-13482
Western District of Oklahoma
Oklahoma City
Mon Nov  2 08:25:44 CST 2020

RHA Stroud, Inc.
2308 Highway 66 West
Stroud, OK 74079-6729

BAXTER HEALTHCARE CORPORATION
ONE BAXTER PARKWAY
DEERFIELD IL 60015-4633

CORPORATION SERVICE COMPANY
AS REPRESENTATIVE
801 ADLAI STEVENSON
SPRINGFIELD IL 62706-0001

FINANCIAL PACIFIC LEASING LLC
PO BOX 4568
FEDERAL WAY WA 98063-4568

FIRST PHYSICIANS BUSINESS SOLUTIONS
4323 NW 63RD ST
OKLAHOMA CITY OK 73116-1547

FIRST PHYSICIANS CAPITAL GROUP INC
9663 SANTA MONICA BLVD SUITE 959
BEVERLY HILLS CA 90210-4303

FIRST PHYSICIANS RESOURCES LLC
14201 WIRELESS WAY
SUITE B-100
OKLAHOMA CITY OK 73134-2521

FIRST PHYSICIANS SERVICES LLC
14201 WIRELESS WAY
SUITE B-100
OKLAHOMA CITY  OK 73134-2521

GE HFS LLC
20225 WATER TOWER BLVD
BROOKFIELD WI 53045-3530

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

USBC Western District of Oklahoma
215 Dean A. McGee
Oklahoma City, OK 73102-3426

BRIDGE HEALTHCARE FINANCE LLC
233 SOUTH WACKER
SUITE 5350
CHICAGO IL 60606-6367

EVANS NATIONAL LEASING INC
ONE GRIMSBY DRIVE
HAMBURG NY 14075-3764

FIRST PHYSICIANS BUS SOL ANADARKO LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS BUSINESS SOLUTIONS LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS REALTY GROUP LLC
C/O J CLAY CHRISTENSEN ESQ
CHRISTENSEN LAW GROUP PLLC
3401 NW 63RD ST SUITE 600
OKLAHOMA CITY  OK 73116-3796

FIRST PHYSICIANS RESOURCES STROUD LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS SERVICES LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

GE HFS LLC
901 MAIN AVENUE
THE TOWERS
NORWALK CT 06851-1168

Oklahoma Employment Security Commission
PO Box 53039
Oklahoma City, OK 73152-3039

B BRAUN MEDICAL INC
824 TWELFTH AVE
BETHLEHEM PA 18018-3524

CHRISTOPHER TAYBACK
KRISTEN BIRD
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 SOUTH FIGUEROA STREET 10TH FLOOR
LOS ANGELES  CA 90017-5003

FINANCIAL PACIFIC LEASING LLC
ATTN GARY BERGSTROM
3455 S 344TH WAY STE 300
FEDERAL WAY 98001-9546

FIRST PHYSICIANS BUS SOL STROUD LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS CAPITAL GROUP INC
14201 WIRELESS WAY
SUITE B-100
OKLAHOMA CITY OK 73134-2521

FIRST PHYSICIANS RESOURCES ANADARKO LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS SERVICES ANADARKO LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

FIRST PHYSICIANS SERVICES STROUD LLC
C/O CAPITOL DOCUMENT SERVICES INC
1833 S MORGAN ROAD
OKLAHOMA CITY OK 73128-7004

GE HFS LLC
9900 W INNOVATION DR
MILWAUKEE WI 53226-4856

GE HFS LLC
CT CORPORATION SYSTEM
301 S BEDFORD ST SUITE 1
MADISON WI 53703-3691

GE HFS LLC
PO BOX 414 W-490
MILWAUKEE WI 53201-0414

GENERAL ELECTRIC CAPITAL CORPORATION
3333 HESPER RD
BILLINGS MT 59102-6744

GENERAL ELECTRIC CAPITAL CORPORATION
901 MAIN AVENUE
THE TOWERS
NORWALK CT 06851-1168

GENERAL ELECTRIC CAPITAL CORPORATION
CT CORPORATION SYSTEM
3011 AMERICAN WAY
MISSOULA MT 59808-1921

GENERAL ELECTRIC CAPITAL CORPORATION
LEGAL DEPT
207 MERIT 7
NORWALK CT  06851

GENERAL ELECTRIC CAPITAL CORPORATION
PO BOX 35701
BILLINGS MT 59107-5701

HANMI BANK
3660 WILSHIRE BLVD #PH-A
LOS ANGELES CA 90010-2719

HANMI BANK
ATTN VIVIAN I KIM GC AND CORP SECTY
3660 WILSHIRE BLVD NO PH-A
LOS ANGELES CA 90010-2387

HANMI BANK
C/O PRENTICE-HALL CORPORTION SYSTEM INC.
2710 GATEWAY OAKS DR SUITE 150N
SACRAMENTO CA 95833-3502

INTERNAL REVENUE SERVICE
55 N ROBINSON AVE
OKLAHOMA CITY OK 73102-9229

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATION
PO BOX 7346
PHILADELPHIA PA 19101-7346

J CLAY CHRISTENSEN
T P HOWELL
CHRISTENSEN LAW GROUP PLLC
3401 NW 63RD STREET SUITE 600
OKLAHOMA CITY OK 73116-3796

JOHNSON & JOHNSON CORP
ATTN MICHAEL H ULLMANN
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK NJ 08933-0001

JOHNSON & JOHNSON CORP
FOR ORTHO CLINICAL DIAG INC
501 GEORGE STREET
NEW BRUNSWICK NJ 08901-1161

JOHNSON & JOHNSON CORP
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK NJ 08933-0001

JOHNSON AND JOHNSON FINANCE CORP
501 GEORGE STREET
NEW BRUNSWICK NJ 08901-1197

JOHNSON AND JOHNSON FINANCE CORP
ATTN MICHAEL H ULLMANN
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK NJ 08933-0001

JOHNSON AND JOHNSON FINANCE CORP
ONE JOHNSON & JOHNSON
NEW BRUNSWICK NJ 08933-0001

KYLE BATTER
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 TWIN DOLPHIN DR 5TH FLOOR
REDWOOD SHORES  CA 94065-2129

LISA M. MOLSBEE
JONATHAN M MILES
CHRISTENSEN LAW GROUP PLLC
3401 NW 63RD STREET SUITE 600
OKLAHOMA CITY OK 73116-3796

MEDICARE PART A
C/O NOVITAS SOLUTIONS
2020 TECHNOLOGY PKWY
MECHANICSBURG PA 17050-9411

MEDICARE PART A
CASHIER
PO BOX 890114
CAMP HILL PA 17089-0114

MITCHELL BLACKBURN
ATTORNEY AT LAW
1700 ONE LEADERSHIP SQ
OKLAHOMA CITY OK  73102

NFS LEASING INC
900 CUMMINGS CENTER
SUITE 226-U
BEVERLY MA 01915-6183

NFS LEASING INC
ASHLEY WHYMAN VP GENERAL COUNSEL
900 CUMMINGS CENTER STE 226-U
BEVERLY MA 01915-6183

NOVITAS SOLUTIONS
C/O COGENCY GLOBAL INC DAUPHIN
600 NORTH 2ND STREET
HARRISBURG PA 17101-1092

OKLA STATE DEPT OF HEALTH
100 VALLEY DRIVE
PAULS VALLEY OK 73075-6613

OKLA STATE DEPT OF HEALTH
1000 NE 10TH ST
OKLAHOMA CITY OK 73117-1299

OKLA STATE DEPT OF HEALTH
CHIEF COUNSEL - KIM BAILEY
LEGAL DEPT
1000 NE 10TH ST
OKLAHOMA CITY OK 73117-1207

OKLAHOMA COUNTY
FORREST BUTCH FREEMAN
OKLAHOMA COUNTY TREASURER
320 ROBERT S. KERR ROOM 307
OKLAHOMA CITY OK  73102-3430

OKLAHOMA COUNTY
SERVICE AGENT CAROLYN CAUDILL
OKLAHOMA COUNTY CLERK
320 ROBERT S KERR ROOM 203
OKLAHOMA CITY  OK 73102-3430

OKLAHOMA EMPLOYMENT SECURITY COMMISSION
LEGAL DIVISION
PO BOX 53039
OKLAHOMA CITY  OK 73152-3039

OKLAHOMA HEALTH CARE AUTHORITY
ATTN: CENTRAL FILES
4545 N LINCOLN BLVD STE 124
OKLAHOMA CITY OK 73105-3413

OKLAHOMA TAX COMMISSION
GENERAL COUNSEL OFFICE
100 NORTH BROADWAY AVENUE SUITE 1500
OKLAHOMA CITY OK 73102-8601

ORTHO-CLINICAL DIAGNOSTICS INC
1001 US HIGHWAY 202
RARITAN NJ 08869-1487

PEOPLES UNITED BANK
ATTN ROBERT E TRAUTMANN SR EX VP GC
850 MAIN ST 13TH FL
BRIDGEPORT CT 06604-4904

PEOPLES UNITED BANK
ONE POST OFFICE SQUARE
SUITE 3710
BOSTON MA 02109-2175

PRIME ALLIANCE BANK
1868 500 WEST
WOODS CROSS UT 84010-7453

PRIME ALLIANCE BANK
ATTN STEVEN SELLERS
1868 500 WEST
WOODS CROSS UT 84010-7453

RICHARD BROSNICK
AKERMAN LLP
666 FIFTH AVE 20TH FLOOR
NEW YORK NY 10103-0020

RURAL HOSPITAL ACQUISITION LLC
3555 NW 58TH STREET 700
OKLAHOMA CITY OK 73112-4703

RURAL HOSPITAL ACQUISITION LLC
4323 NW 63RD ST  SUITE 100
OKLAHOMA CITY OK 73116-1513

RURAL HOSPITAL ACQUISITION LLC
C/O CAPITOL DOCUMENT SERVICE
1833 S MORGAN RD
OKLAHOMA CITY OK 73128-7004

SOCIAL SECURITY ADMINISTRATION
ATTN BANKRUPTCY COORDINATOR
OFFICE OF THE GEN COUNSEL REGION VI
1301 YOUNG STREET STE A702
DALLAS TX 75202-4813

STERIS CORPORATION
5960 HEISLEY RD
MENTOR OH 44060-1834

STERIS CORPORATION
ATTN J. ADAM ZANGERLE
5960 HEISLEY RD
MENTOR OH 44060-1834

STROUD NATIONAL BANK
300 W MAIN ST
STROUD OK 74079-3612

STROUD NATIONAL BANK
PO BOX 450
STROUD OK 74079-0450

THE FIRST STATE BANK
3030 NW EXPRESSWAY
SUITE 130
OKLAHOMA CITY OK 73112-5466

THERMO FISHER FINANCIAL SERVICES INC
168 THIRD AVE
WALTHAM  MA 02451-7551

THERMO FISHER FINANCIAL SERVICES INC
81  WYMAN STREET
WALTHAM  MA 02451-1223

THERMO FISHER FINANCIAL SERVICES INC
CAPITOL CORPORATE SERVICES INC
44 SCHOOL STREET SUITE 505
BOSTON MA 02108-4221

TRIAD BANK NA
3030 NW EXPRESSWAY SUITE 130
TULSA OK 74153

TRIAD BANK NA
PO BOX 35567
TULSA OK 74153-0567

UNITED STATES TRUSTEE
215 DEAN  MCGEE AVE 4TH FLOOR
OKLAHOMA CITY OK 73102-3479

US BANCOR
THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER 1209 ORANGE ST
WILMINGTON DE 19801-1196

US BANCORP
ATTN JAMES L CHOSY
LEGAL DEPT
800 NICOLLET MALL STE 1500
MINNEAPOLIS MN 55402-7014

US BANCORP
C/O CT CORPORATION SYSTEM
1010 DALE ST N
ST PAUL MN 55117-5603

US BANCORP
TWO APPLETREE SQUARE
SUITE 325
BLOOMINGTON MN 55425

United States Trustee
United States Trustee
215 Dean A. McGee Ave., 4th Floor
Oklahoma City, OK 73102-3479

VALLIANCE BANK
1501 24TH ABE NW
NORMAN  OK  73069

VALLIANCE BANK
ATTN BRAD SWICKEY
1601 NW EXPRESSWAY
OKLAHOMA CITY OK 73118-1443


WELLS FARGO BANK NA
625 MARQUETTE AVE FL 16
MINNEAPOLIS MN 55402-2308

WELLS FARGO BANK NA
C/O CORPORATION SERVICE COMPANY
2345 RICE STREET SUITE 230
ROSEVILLE MN 55113-3769

WELLS FARGO BANK NA
LEGAL DEPT
420 MONTGOMERY ST
SAN FRANCISCO CA 94104-1298


WELLS FARGO BANK NA
LEGAL ORDER PROCESSING
PO BOX 1416
CHARLOTTE NC 28201-1416

WELLS FARGO BANK NA
MAC N9311-161 SIXTH AND MARQUETTE
MINNEAPOLIS MN 55479-0001

WELLS FARGO FINANCIAL LEASING INC
800 WALNUT ST MAC N0005-004
DES MOINES IA 50309-3891


WELLS FARGO FINANCIAL LEASING INC
ATTN CRAIG LONG
800 WALNUT ST SUITE
DES MOINES IA 50309-3891

WELLS FARGO FINANCIAL LEASING INC
ATTN SYLWIA DABROWSKA PERRY SR. COUNSEL
800 WALNUT ST SUITE
DES MOINES IA 50309-3891

WINTHROP RESOURCES CORPORATION
11100 WAYZATA BLVD
SUITE 800
MINNETONKA MN 55305-5525


WINTHROP RESOURCES CORPORATION
ANNE KRUGER SR. VP GC
1405 XENIUM LN. N
PLYMOUTHMN 55441-4402

WINTHROP RESOURCES CORPORATION
C/O CORPORATION TRUST CO
129 ORANGE ST.SUITE 800
WILMINGTON DE 19801

Jolene M. Wise
Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604-2908


Leif Swedlow
Rubenstein & Pitts, PLLC
1503 East 19th St.
Edmond, OK 73013-6737

Michael A Rubenstein
Rubenstein & Pitts, PLLC
1503 East 19th Street
Edmond, OK 73013-6737


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)First Physicians Business Solutions, LLC

(u)First Physicians Realty Group, LLC

(u)First Physicians Resources, LLC


(u)First Physicians Services LLC

(u)Rural Hospital Acquisition, LLC

(d)FIRST PHYSICIANS CAPITAL GROUP INC
14201 WIRELESS WAY SUITE B-100
OKLAHOMA CITY OK 73134-2521


End of Label Matrix
Mailable recipients   106
Bypassed recipients     6
Total                 112