IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re.<br><br>RHA Stroud, Inc.,[1]<br><br>    Debtor.<br>_____ | )  Case No.: 20-13482-SAH<br>)  Chapter 11<br>)<br>)  [Jointly Administered]<br>)<br>) |

**DEBTORS' MOTION FOR AUTHORITY TO ENTER INTO MANAGEMENT
SERVICES AGREEMENTS WITH ARCADIA HEALTH PARTNERS, LLC PURSUANT
TO 11 U.S.C. §§ 105(a) AND 363(b) AND NOTICE OF OPPORTUNITY FOR HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING**

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than twenty-one (21) days from the date of filing this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.

**The twenty-one (21) day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

      RHA Stroud, Inc., d/b/a Stroud Regional Medical Center ("Stroud Hospital") and RHA Anadarko, Inc. d/b/a The Physicians' Hospital in Anadarko ("Anadarko Hospital") (each a "Debtor," and collectively, the "Debtors" or "Hospitals") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification number is: RHA Stroud, Inc. (2635) and RHA Anadarko, Inc. (2528). The principal place of business for the Debtors is 2308 Highway 66 West, Stroud, OK 74079 and 1002 East Central Blvd. Anadarko, OK 73005.

55324610;3

motion (the "Motion"), pursuant to 11 U.S.C. §§ 105(a) and 363(b), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 6004-1(a), for entry of an Order in substantially the form attached hereto as **Exhibit A**, authorizing the Debtors to enter into new management services agreements (the "New Management Agreements") with Arcadia Health Partners, LLC ("Arcadia") and granting related relief. In support of the Motion, the Debtors say:

## I.     JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1.

## II.     FACTUAL BACKGROUND

4.    On October 25, 2020 the ("Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5.    The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

6.    The Debtors are the largest non-profit healthcare system based in Lincoln County and Caddo County, Oklahoma, with combined annual revenues of approximately $94.3 million in fiscal year 2019.  One Cura Health f/k/a One Cura Wellness is the parent non-profit

organization of the Debtors. Affiliate companies operate two medical clinics located in Stroud and Anadarko, Oklahoma.

7. The Debtors operate as a nonprofit health care system providing medical services to patients who generally reside in Lincoln County and Caddo County, Oklahoma and surrounding communities (collectively, the "Hospitals"). Collectively, they have fifty (50) licensed beds, two active emergency rooms, and a host of medical specialties.

8. The Hospitals in the health care system are designated Critical Access Hospitals ("CAH").[2] The Patient Days for the past year have exceed 12,000 cumulative patient days at an approximate 88% capacity for the hospitals. Emergency Room visits exceed 7,500 per year. There were 880 Outpatient Surgeries for 2019 and that number is expected to be similar for 2020.

9. Debtors' necessity to the health and welfare of the people of Lincoln County and Caddo County and surrounding counties is evidenced by several facts, including having the:

*only* Post-acute, medically complex swing bed program in Lincoln / Caddo County;

*only* Emergency Rooms in Lincoln / Caddo County;

*only* hospitals that offer inpatient/bedside dialysis in Lincoln / Caddo County

*only* hospital in Stroud, Oklahoma; and

*only* hospital in Anadarko, Oklahoma.

---

[2] To be eligible to be a CAH the hospital must be located in a State that has established a State Medicare Rural Hospital Flexibility Program; be designated by the State as a CAH; be located in a rural area or an area that is treated as rural; be located either more than 35-miles from the nearest hospital or CAH or more than 15 miles in areas with mountainous terrain or only secondary roads; OR prior to January 1, 2006, were certified as a CAH based on State designation as a "necessary provider" of health care services to residents in the area; maintain no more than 25 inpatient beds that can be used for either inpatient or swing-bed services; maintain an annual average length of stay of 96 hours or less per patient for acute inpatient care (excluding swing-bed services and beds that are within distinct part units); demonstrate compliance with the CAH CoPs found at 42 CFR Part 485 subpart F; and Furnish 24-hour emergency care services 7 days a week. *See* https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/CAHs

3

10. The Hospitals are designated Critical Access as they are safety nets for people that cannot travel to the larger cities for care – and are especially critical for time-sensitive diagnosis and treatments such as heart attacks and strokes. The nearest alternative hospitals to Anadarko Hospital and Stroud Hospital are located respectively seventeen (17) and twenty (20) miles away.

11. The Hospitals also provide a plethora of community service initiatives – many have been developed in partnership with local governments, police, schools and universities, etc. These programs include but are not limited to:

- Adult Basic Education (GED Preparation)
- Adult Financial Literacy
- Diabetes Prevention Program
- Telehealth Assessment Program (TAP)
- Wichita & Affiliated Tribes RISE Program for Suicide Prevention
- Dinner & Learn Series
- Diabetes Empowerment Education Program (DEEP)
- Meals on Wheels
- Tai Chi Classes
- Community Computer Access Program (CCAP)
- Live healthy, Eat healthy, and be Active with Diabetes (LEAD)
- Community Health Fairs

12. The Debtors have no employees. All physicians, medical staff and employees are retained by First Physicians Resources Anadarko, LLC or First Physicians Resources Stroud, LLC by virtue of a Staff and Provider Leasing Agreements.

13. Collectively, the Debtors provide the following services: 24 hour emergency department, inpatient medical services, inpatient surgical services, ambulatory and outpatient surgical services (including gastro intestinal procedures, general surgery, pain management, podiatry, ophthalmology, orthopedic, urology), cardiology clinic services, dialysis, physical and occupational therapy, speech therapy, respiratory therapy, radiology and imaging services to include CT scanning, Xray, and ultrasound, sleep disorder diagnostic services, full service laboratory testing, acute inpatient services, skilled nursing facility, swing bed inpatient services, wellness programs, inpatient wound care, and wound care clinic.

14. Each Hospital has an Advisory Board which is composed of local citizens, including educators, Chamber of Commerce, local Native American tribal leaders, bankers, and health practitioners.

15. The Debtors are subject to numerous laws and regulations of federal, state, and local governments related to licensure, accreditations, and government healthcare program participation requirements, and reimbursement for patient services. For instance, the Hospitals are licensed by the Oklahoma Health Care Authority and Oklahoma State Department of Health and are certified to participate in the Medicaid and Medicare programs.

16. The Debtors are a party to multiple contracts and notes, including a management agreement, real property lease, ancillary service contracts, and staffing leasing agreement with companies collectively referred to herein as "First Physicians".

17. The Debtors' assets include their operating Hospitals, the lease rights to real estate on which the Hospitals operate, accounts receivable, equipment, supplies, and cash on hand. The Debtors have approximately $12.8 million in net accounts receivable ("A/R") as of September 30, 2019 based on historic collection rates. As of the Petition Date, the Debtors'

combined cash on hand is $3,115,735.08. The Debtors aver they also have causes of action based upon significant failures caused by First Physicians.

18. The Debtors believe that a successful restructuring can only occur under the protection of bankruptcy.

19. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases are set forth in the *Declaration of Charles M. Eldridge in Support of First-Day Motions* (Doc. No. 6) and incorporated herein by reference as though set forth in full.

### III.   THE NEW MANAGEMENT AGREEMENTS

20. The Debtors seek authority to each into New Management Agreements[3] with Arcadia. Contemporaneously herewith, the Debtors are filing a motion to reject (the "Motion to Reject") the current management, staff leasing, and ancillary services agreements (all of which are with First Physicians entities) (collectively, the "Rejected Agreements").[4]

21. As set forth in the Motion to Reject, the Rejected Agreements are extraordinarily financially burdensome and the working relationship between the Debtors and First Physicians is rapidly deteriorating as a result of First Physicians' refusals to comply with their obligations under the Rejected Agreements and otherwise cooperate with the Debtors' reasonable requests.

22. Arcadia, in partnership with Cohesive Healthcare Solutions and South Plains Medical Group (collectively, the "Subcontractors"), will bring decades of experience in providing hospital management and staffing services to critical access hospitals in the Oklahoma market. Sean Kirrane, Arcadia's managing partner, was formerly Chief Financial Officer, Chief Executive Officer, and Board Member of First Physicians Capital Group. Arcadia's proposal for

---

[3] The New Management Agreements are substantially the same for each Hospital.
[4] The Rejected Agreements are specifically identified on Schedule 1 to Exhibit A to the Motion to Reject.

the New Management Agreements, together with its credentials, including those of Mr. Kirrane and other key management personnel, are attached hereto as **Exhibit B**.

23. The material terms of the New Management Agreements[5] include:

   a. Arcadia and the Subcontractors will provide the Debtors the following services at the following costs:

   i. Staffing services and contract labor at a rate of cost plus 75%;

   ii. Hospital operations management for daily operations and administrative oversight for a fee of $400,000 per month per Hospital;

   iii. Revenue cycle activities, including coding, billing, and collections, for a fee of 7.5% of Hospital collections;

   iv. Emergency room management, including providing an emergency room manager, medical director, and physician or mid-level on call coverage for a fee of $700,000 per month per Hospital;

   v. Accounting and financial services, including providing a virtual chief financial officer, for a fee of $125,000 per month per Hospital;

   vi. Information technology services, including providing a virtual chief information officer, for a fee of $85,000 per month per Hospital;

   vii. Human resources services, including providing a virtual director of human resources, for a fee of $85,000 per month per Hospital;

   viii. Centralized supply chain management services, including providing a virtual supply chain manager, for a fee of $85,000 per month per Hospital;

   ix. Health information management ("HIM") services, including providing a virtual HIM manager, for a fee of $85,000 per month per Hospital;

   x. Hospitalists, including physicians and mid-level providers, for a fee of $225,000 per month per Hospital;

   xi. Lab management services, including providing a hospital lab manager and medical director (physician), for a fee of $125,000 per month per Hospital;

---

[5] The Debtors will file copies of the New Management Agreements prior to any hearing on this Motion.

    xii.  Pharmacy management services, including providing a pharmacy manager and licensed pharmacist, for a fee of $50,000 per month per Hospital;

    xiii.  Radiology management services, including providing a radiology manager and medical director (physician) for a fee of $125,000 per month per Hospital; and

    xiv.  General consulting services to provide additional support or project work at advisor rates of $375-$425 per hour for partners, $225-$350 per hour for senior advisors, and $175 per hour for advisors.

    b.  The term of each New Management Agreement will be one year, from the effective date of the New Management Agreement, unless extended as permitted thereunder.

24.  The New Management Agreements will provide the Debtors significant cost savings in multiple expense categories, including the Debtors' revenue cycle fees, accounting, management, HIM, supply chain, human resources, information technology, pharmacy, emergency room, hospitalists, radiology and laboratories, in the aggregate amount of approximately $30 million annually.

25.  The Debtors intend to work diligently with both First Physicians and Arcadia to accomplish a smooth transition under the New Management Agreements to ensure patient safety and continuation of the highest levels of patient care. To that end, the Debtors request the Bankruptcy Court direct First Physicians and Arcadia to work together to transition the Debtors' operations and management to Arcadia, in accordance with normal hospital management transition protocol.

### IV.   RELIEF REQUESTED

26.  By this Motion, the Debtors request entry of an Order in the form attached hereto as **Exhibit A**, pursuant to 11 U.S.C. §§ 105(a) and 363(b), authorizing the Debtors to enter into the New Management Agreements and for related relief.

## V.     BASIS FOR RELIEF REQUESTED

27. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," subject to certain exceptions not applicable here. *See* 11 U.S.C. § 363(b)(1).

28. Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29. To approve a use, sale, or lease of property outside of the ordinary course of the Debtor's business, the Court must find "some articulated business justification." *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of *Lionel Corp.* and requiring show of good faith); *In re Delaware & Hudson R. Co.*, 124 B.R. 169, 176 (D.Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test after *Abbots Dairy*); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (same).

30. "Evidence that a debtor in possession has used reasonable business judgment and has articulated a business justification for a lease transaction includes generation of revenue which will benefit the estate." *In re SW Boston Hotel Venture, LLC*, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D.Mass. Aug. 27, 2010).

31. The Debtors are exercising their reasonable business judgment in rejecting the Rejected Agreements and entering into the New Management Agreements. The terms and resulting significant cost savings of the New Management Agreements justify the Debtors' entry

9

into it as it will reduce current management, staffing, and services fees by approximately $30 million annually, allowing the Debtors to generate revenue that will benefit these bankruptcy estates and allow the Debtors to pursue a viable path toward reorganization.

32. Moreover, the Debtors anticipate a substantially more cooperative working relationship with Arcadia, which will eliminate the difficulties and distractions caused by First Physicians in the current relationship. Arcadia is experienced in the rural hospital space and stands ready to provide the services and benefits the Debtors had expected to receive under the Rejected Agreements with First Physicians.

33. Accordingly, in exercise of their sound business judgment, the Debtors respectfully request the Court authorize the Debtors to enter into the New Management Agreements with Arcadia.

## VI. **NO PRIOR REQUEST**

34. No prior request for the relief sought in this Motion has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of an order in substantially the form attached hereto as **Exhibit A** (i) authorizing the Debtors to enter into the New Management Agreements, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: November 16, 2020　　　　　　　　　Respectfully Submitted,

**AKERMAN LLP**

By: *s/ Esther McKean*
Florida Bar No. 028124
420 S. Orange Ave., Suite 1200
Orlando, Florida, 32801
Telephone: 407- 419-8583
Fax : 407-843-6610
esther.mckean@akerman.com
*Pro Hac Vice Admitted*

By: *s/ David W. Parham*
Texas Bar No. 15459500
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: 214-720-4300
Fax : 214-981-9339
david.parham@akerman.com
*Pro Hac Vice Admitted*

By: *s/ Catherine Kretzschmar*
Florida Bar No. 85843
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: 954-486-2443
Fax : 954-847-5336
catherine.kretzschmar@akerman.com
*Pro Hac Vice Admitted*

Proposed Attorneys for Debtors

**RUBENSTEIN & PITTS, PLLC**

By: s/ Michael A. Rubenstein
Michael A. Rubenstein, OBA #7806
Leif Swedlow, OBA #17710
1503 E. 19th Street
Edmond, OK  73013
Telephone:  405 -340-1900
Fax: 405-340-1001
mrubenstein@oklawpartners.com
lswedlow@oklawpartners.com

Proposed Attorneys for Debtors

55324610;3

## CERTIFICATE OF SERVICE

This is to certify that on the 16th day of November, 2020, a true and correct copy of the *Debtors' Motion for Authority to Enter into New Management Services Agreements with Arcadia Health Partners, LLC Pursuant to 11 U.S.C. §§ 105(a) and 363(b)*, filed on November 16, 2020, was served upon counsel registered with the CM/ECF system in this case and was forwarded via U.S. Mail, first class, postage prepaid to those parties listed on the attached matrix.

By: *s/ Esther McKean*
Esther McKean (FL Bar No. 028124)

55324610;3