# EXHIBIT 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western _____ District of  Oklahoma _____

In re  RHA Stroud, Inc. _____
                    Debtor

*(Complete if issued in an adversary proceeding)*

_____
                    Plaintiff
                        v.
_____
                    Defendant

Case No.  20-13482-SAH (Jointly Administered) _____

Chapter  11 _____

Adv. Proc. No.  _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Arcadia Health Partners, LLC, 1513 NW 189th Street, Edmond, OK 73012 _____
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Exhibit 1.

| PLACE | DATE AND TIME |
|---|---|
| Christensen Law Group, P.L.L.C., 3401 N.W. 63rd Street, Suite 600, Oklahoma City, Oklahoma 73116 | 12/11/2020 at 12 pm (CST) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/20/2020 _____

CLERK OF COURT

_____            OR    _____
Signature of Clerk or Deputy Clerk                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
 Rural Hospital Acquisition, LLC, et al. _____ , who issues or requests this subpoena, are:

J. Clay Christensen, Christensen Law Group, P.L.L.C., 3401 N.W. 63rd Street, Suite 600, Oklahoma City, Oklahoma 73116, clay@christensenlawgroup.com, 405-232-2020

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____  .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
                                    *Server's signature*

_____
                                    *Printed name and title*

_____
                                    *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT 1

# EXHIBIT 1

# DEFINITIONS

As used herein, the terms listed below shall be defined as follows.  Insofar as a term is not explicitly defined, the meaning to be used is the commonly accepted definition of the term.  None of the definitions set forth below are intended to narrow the scope of discovery permitted by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure, and the definitions and Requests should be read as broadly as permitted by those rules.

1.      "Arcadia" or "you" or "your" means Arcadia Health Partners, LLC, and includes, where applicable, any entities constituting parents, predecessors, successors, subsidiaries, affiliates, divisions, associated organizations, or joint ventures, as well as its officers, directors, employees, staff members, agents, or other representatives.

2.      "Arcadia Proposal" means that certain proposal dated November 12, 2020 and filed as ECF No. 134-2 on November 16, 2020 in the Bankruptcy Cases.

3.      "RHA Anadarko" means RHA Anadarko, Inc., Debtor in *In re RHA Anadarko, Inc.*, Case No. 20-13483, and includes, where applicable, any entities constituting parents, predecessors, successors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as its officers, directors, employees, staff members, agents, or other representatives.

4.      "RHA Stroud" means RHA Stroud, Inc., Debtor in *In re RHA Anadarko, Inc.*, Case No. 20-13483, and includes, where applicable, any entities constituting parents, predecessors, successors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as its officers, directors, employees, staff members, agents, or other representatives.

5.      "Debtors" refers to RHA Stroud (Debtor in *In re RHA Stroud, Inc.*, Case No. 20-13482, which is jointly administered with *In re RHA Anadarko*) and RHA Anadarko.

6.      "One Cura" means One Cura Wellness, Inc., the owner of RHA Stroud and RHA Anadarko, and includes, where applicable, any entities constituting parents, predecessors, successors, subsidiaries, affiliates, divisions, associated organizations, or joint ventures, as well as its officers, directors, employees, staff members, agents, or other representatives.

7.      "Stroud hospital" or "hospital in Stroud" mean Stroud Regional Medical Center in Stroud, Oklahoma.

8.      "Anadarko hospital" or "hospital in Anadarko" mean The Physicians' Hospital in Anadarko, located in Anadarko, Oklahoma.

9.      "Hospitals" means, jointly, the hospital in Stroud and the hospital in Anadarko.

10.      "RH Acquisition" or "secured creditor" or "note holder" mean Rural Hospital Acquisition, LLC, the secured creditor of RHA Stroud and RHA Anadarko.

11.      "FP Realty" or "landlord" mean First Physicians Realty Group, LLC, the landlord of RHA Stroud and RHA Anadarko.

12.      "FP Business" or "management company" or "manager" mean First Physicians Business Solutions, LLC.

13.      "FP Resources" means First Physicians Resources, LLC.

14.      "FP Services" means First Physicians Services, LLC.

15.      "FP Group" means, collectively, RH Acquisition, FP Realty, FP Business, FP Resources, and FP Services.

16.      "Notes" means the promissory notes, as amended and restated on November 30, 2015, between RH Acquisition and each of the Debtors.

17.     "Lease" means the lease between FP Realty, RHA Stroud, and RHA Anadarko entered into on April 1, 2011, pursuant to which FP Realty leases to Debtors the premises upon which Debtors operate the Hospitals.

18.     "Management agreements" or "MSAs" refer to the Management Services Agreements between FP Business and each of the debtors entered into on April 1, 2011.

19.     "Staffing agreements" or "SLAs" refer to the Staff Leasing Agreements between FP Resources and each of the debtors entered into on April 1, 2011.

20.     "Services agreements" or "ASAs" refer to the Ancillary Services Agreements between FP Services and each of the debtors entered into on April 1, 2011.

21.     "Petition" or "petitions" mean the Chapter 11 petitions the Debtors have filed in these proceedings.

22.     "Bankruptcy Cases" shall mean the above-captioned Chapter 11 cases.

23.     "State Action" or "state court action" or "Receivership Action" mean the case and captioned *Rural Hospital Acquisition, LLC, et al. v. RHA Stroud, Inc., et al. v. First Physicians Business Solutions, LLC, et al.*, Case No. CJ-20-31, pending in the District Court of Lincoln County, State of Oklahoma, which is currently stayed.

24.     "Document" or "documents" shall be used in the broadest sense permitted under Federal Rule of Civil Procedure 34(a).

25.     "Draft(s)" shall mean any earlier, preliminary, preparatory, or tentative version of all or part of a Document or Communication, whether or not such Draft was superseded by a later Draft and whether or not the terms of the Draft are the same as or different from the terms of the final Document or Communication.

26.     "Communication" or "communications" mean written or verbal exchanges between any person(s) or entity(ies), including without limitation verbal conversation, telephone calls, facsimiles, email, or any other means of electronic communication, letter, memoranda, reports, and any other documents which refer or relate to the written or verbal exchange.

27.     "Person" or "persons" mean any individual, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, including governmental bodies and agencies.

28.     "Concern," "concerning," "relate to," or "relating to" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

29.     "Identify," "identifies," or "identification" mean:  (1) when referring to a person, the person's full name, present or last known address, and the last known title and place of employment; (2) when referring to a business, legal, or governmental  entity or association, the name and address of the main office; (3) when referring to a fact, the fact and the documentary or testimonial support for that fact; (4) when referring to a written communication, identity of the document(s) in which the communication was made; (5) when referring to an oral communication, the identity of persons participating in the communication.

30.     "Any" and "all" each mean and include the other.

31.     "Include" and "including" mean including without limitation.

### **INSTRUCTIONS**

1.     Unless otherwise stated in a specific request, these requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced,

received, obtained, or otherwise created or distributed, concerning or in effect during the period from October 25, 2018 to the present.

2.      This Subpoena is continuing in nature.  If, after producing the requested Documents, you obtain or become aware of any further responsive Documents (including Documents Concerning facts and circumstances arising after service of these Requests), you must produce to FP Group such additional Documents.

3.      Unless otherwise indicated, the Documents requested include all Documents in your possession, custody, or control.  Without limiting the terms "possession, custody, or control" as used in the preceding sentence, a Document is in your possession, custody, or control if you have actual possession or custody or the right to obtain the Document or a copy thereof upon demand from one or more of your members, officers, directors, employers, prospective employers, employees, representatives, agents, consultants, advisors, attorneys, assigns, independent contractors, affiliates, parents, subsidiaries, divisions, related companies, predecessors-in-interest, independent contractors, consultants, or any other Person or public or private entity that has actual physical possession thereof.  In respect of e-mail, the terms "possession, custody, or control" include, without regard to the subdirectory path where stored: (a) "deleted" e-mails that have not been permanently deleted, (b) "sent" e-mails, (c) "received" e-mails, (d) e-mails stored in any personal accounts, and (e) any Drafts of the foregoing that have not been permanently deleted.

4.      Produce each Document as it is kept in the usual course of business.

5.      Select Documents from files and other sources and number such Documents so that the source of each Document may be readily determined.

6.      A Draft of a Document is unique and separate from the final version of that Document.  All Drafts of each Document are to be produced.

7.     Produce each Document in its entirety, without abbreviation or redaction, and include all attachments, transmittal sheets, notes, cover letters, exhibits, appendices, enclosures, and all Drafts and non-identical copies of each Document.

8.     Produce Documents not otherwise responsive to a Request if such Documents are attached to, or enclosed with, any responsive Document.  In respect of e-mail, produce the e-mail and all attachments if either the e-mail or any attachment is responsive.

9.     Documents attached to each other shall not be separated, and shall be produced together.

10.     To the extent Documents or Communications responsive to these Requests are transmitted as part of a package, collection, or group of Documents or Communications, the entire package, collection, or group of Documents or Communications shall be produced in full, without regard to the responsiveness of other Documents or Communications in such package, collection, or group.  Any such package, collection, or group of Documents or Communications shall be produced in such a way that retains the grouping of such Documents or Communications.

11.     Produce file folders with tabs or labels intact with such Documents.

12.     Produce complete electronic-file directories intact with such Documents.

13.     A Document with handwritten, typewritten, or other notes or editing marks is a separate, unique Document and is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

14.     If your response to a particular Request is a statement that you lack the ability to comply with that Request, specify whether the inability to comply is because the particular Document, item, or category of information never existed; was destroyed, lost, misplaced, or stolen; or was never, or is no longer, in your possession, custody, or control.  Identify any Person known

6

or believed by you to have possession, custody, or control of that particular Document, item, or category of information.

15.     Production of any Document by another Person does not relieve you of your obligation to produce your copy of the same Document, even if the Documents are identical.

16.     Each Request is independent.  No Request limits the scope of any other Request.

17.     References to entities or corporations other than natural persons shall be deemed to include, in addition to the entity named, its branches, divisions, departments, subsidiaries, affiliates, parents, predecessors, present or former officers, present or former directors, employees, agents, representatives, accountants and attorneys, successors, and all other persons acting or purporting to act on behalf of each such entity or corporation.

18.     Any ambiguity in the following requests should be resolved by producing more responsive documents.

19.     If no Documents are responsive to a particular Request, you are to state that no responsive Documents exist for that particular Request.

20.     If you cannot fully respond to the following requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each request that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the request cannot be answered fully and completely; and state what knowledge, information, or belief you have concerning the unanswered portion of any such request.

21.     The singular includes the plural and vice versa, except as the context may otherwise require.

22.     Wherever appropriate, verb tenses shall be interpreted to include past, present, and future tenses.

23.     FP Group reserves the right to propound additional requests for production.

24.     You shall provide all non-privileged portions of Documents and Communications containing material over which a claim of privilege has been asserted by excising, concealing, redacting, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excision, concealment, redaction, or other protection is strictly necessary for the purposes of the claim of privilege.

25.     If you withhold any Documents or Communications requested herein in whole or in part on the basis of any assertion of privilege or other immunity from discovery, identify the privilege or protection claimed as well as each document for which such privilege or protection is claimed, together with the following information with respect to each such document:

1.     Date;

2.     Sender;

3.     Addressee;

4.     Subject matter; and

5.     The basis on which the privilege or protection is claimed.

26.     Documents originally in paper or physical form should be digitized into single-page, group IV (G4) format, black and white TIFF files at 300 dots per inch ("dpi"). Filenames of the TIFF files should match the Document's Bates number, and be zero padded with no blank spaces. Each production of Documents should include an archival image link file (*i.e.*, an Opticon (.OPT) file or similar). Additionally, each production should include standard Concordance default delimited text files in .DAT or similar format and include all available fielding data, including but not limited to beginning and ending Bates numbers, beginning and ending attachment numbers,

and number of pages. Optical Character Recognition ("OCR") software should be applied to all Documents and OCR-searchable files should be created in .TXT format for each page digitized. These .TXT files should be produced and the filenames for the .TXT files should synchronize with/be identical to the filenames for the corresponding TIFF files. Delivery TIFF files should be accompanied by the corresponding full text .TXT files.

27. Standard electronic Documents and emails should be produced as single-page, group IV (G4) format, black and white TIFF files at 300 dots per inch ("dpi"). All attachments, addendums, enclosures, or exhibits to parent documents should be produced and identified as they relate to the respective parent Document. Digital Documents should be produced with corresponding .TXT files as outlined above in the previous paragraph, as well as extracted metadata fields (where available) as set forth in the table contained immediately subsequent to this paragraph. Extracted text, as opposed to OCR text, should be delivered with the production of electronic Documents and emails and this extracted text should be formatted in .TXT file as described above with respect to OCR text files. All spreadsheets should be produced in native format and in the order of storage in native, ordinary course of business manner. For instance, emails with attached spreadsheets should be identified and linked per the ATTACH_RANGE field. To avoid unnecessary duplications, placeholder TIFF files should be produced to preserve the native location of files. The placeholder TIFF file should identify the document by associated Bates number, the original file name, and state that the document was natively produced. Available metadata and text should be produced for spreadsheets in the same manner as other Documents. All PowerPoint presentations should be produced in native form and produced in the order of storage in native, ordinary course of business manner. For instance, emails with attached PowerPoint presentations should be identified and linked per the ATTACH_RANGE field. To

9

avoid unnecessary duplications, placeholder TIFF files should be produced to preserve the native location of files. A placeholder TIFF file should identify the Document by associated Bates number, the original file name, and state that that the document was natively produced. Available metadata and text should be produced for PowerPoints in the same manner as other documents. To the extent that standard electronic Documents or databases are produced in native format in TIFF or other static format (PDF, etc.), production should also be made in native format if the Documents or databases are inadequate in the form produced. Native files should be produced with delimited TXT file containing BEGPROD, ENDPROD, ATTACH_RANGE, Path to Native File, and MD5/Hash value. Digital Documents should be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comment. Electronic records and computerized information shall be produced in an intelligible format, together with a description of the system from which they were derived, sufficient to permit rendering the records and information intelligible.

28.    The following metadata fields should be provided for all Documents:

| Field Name | Sample Data | Description |
|---|---|---|
| PRODBEG | DP000000222 | First Bates number of native file document/email |
| PRODEND | DP000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |

| Field Name | Sample Data | Description |
|---|---|---|
| ATTACH_RANGE | DP000000222- DP000000229 | Beginning Bates number of parent document through ending Bates number of last attachment/child document |
| CUSTODIAN | Adams, John; johnadams@1776.gov | Email:  mailbox in which the file was located Native:  Individual who originated the document |
| DUPLICATE CUSTODIAN | Franklin, Ben; Hancock, John, Whipple, William | When global deduplicating has been employed, the custodians who had duplicates of the identical document |
| FROM | Adams, John | Email author/sender |
| TO | Hancock, John[mailto: HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto:  bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | NA | Blind carbon copy recipient(s) of email |
| SUBJECT | Declaration w/ edits | Email:  subject line Native: document title |
| TITLE | Draft Declaration | Title field extracted from the Metadata of a non-Email Document |

11

| Field Name | Sample Data | Description |
|---|---|---|
| DATE_SENT | 7/3/1776 | Email: date the email was sent |
| TIME_SENT | 12:59 AM | Email: time at which email was sent on date in date field |
| PARENT DATE | 01/01/2020 | The date of the parent email should be applied to the parent email and all of the email attachments to the extent reasonably practicable |
| PARENT TIME | 6:02 PM | The time of the parent email should be applied to the parent email and all of the email attachments to the extent reasonably practicable |
| DATE_RECEIVED | 01/01/2020 | Email: date the email was received |
| TIME RECEIVED | 6:02 PM | Email: time at which email was received on date in date field |
| NATIVE_LINK | D:\1969\ P000000222.MSG | Hyperlink to web address, named uniformly with first bates of parent document |
| FILE_EXTEN | i.e., MSG, DOCX, PDF, etc. | File extension of email or native document |

| Field Name | Sample Data | Description |
| --- | --- | --- |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| DATE_CREATED | 6/1/2009 | Date native document was created |
| TIME_CREATED | 7:32 AM | Time native document was created |
| DATE_MOD | 10/12/2010 | Date native document was last modified |
| TIME_MOD | 5:30 PM | Last modification time |
| PGCOUNT | 1 | Total pages of each original document/email |
| Full Text Path | D:\1969\ P000000222.txt | UNC path to text files of extracted/OCR text (unless redacted) |
| NATIVE PATH | \\Prod001\Natives\ABC0000001.xls | Path to native file |
| MD5/SHA1 | E4d909c290d0fb1ca068ffaddf22cbd0 | Hash code created for file in connection with deduplication |
| ORIGINAL FILE PATH | C:\Documents and Set-tings\user1\My Docu-ments\General | Path to original file |
| FILE NAME | 1d0cbe9510845fbfbe23519a8 902d.mail | Filename of the original source ESI as stored by the custodian. |
| FILE SIZE | 2 | File size in kilobytes (KB) |

| Field Name | Sample Data | Description |
|---|---|---|
| REFERENCE CHAIN | <0e24be9ab2df4f40889b15a7b4381a86@mail.com> | The Outlook message reference chain or conversation index (if applicable) |
| IMPORTANCE | High Priority | Email importance flag |
| TIMEZONE | EST | Time zone of documents |
| RECORD_TYPE | Paper | To indicate whether hard copy or ESI item |

## DOCUMENT REQUESTS

1.      All Documents and Communications concerning the Arcadia Proposal, including drafts of the Arcadia Proposal, any documents sufficient to show when negotiations between the Debtors or One Cura, on the one hand, and Arcadia, on the other hand, began and how the terms and fee arrangement of any services to be rendered by Arcadia were determined.

2.      All Documents and Communications concerning Arcadia's plan to manage the hospitals of Anadarko and Stroud, including documents sufficient to show the employees and staff Arcadia would hire, the vendors Arcadia would engage with, and the business plans Arcadia would utilize to maintain hospital operations.

3.      All Documents and Communications between Arcadia and the Debtors and/or One Cura concerning these Bankruptcy Cases.

4.      All Documents and Communications concerning the formation of Arcadia.

5.      All Documents and Communications concerning the organizational structure of Arcadia.

6.      All Documents and Communications concerning the management of Arcadia.

7.      All Documents and Communications concerning the employees of Arcadia.

8.      All Documents and Communications concerning the contractors of Arcadia.

9.      All Documents and Communications concerning the past and current clients of Arcadia.

10.     All Documents and Communications concerning fee arrangements Arcadia has with other clients.

11.     All Documents and Communications concerning Arcadia's relationship with Southern Plains Medical Group.

12.     All Documents and Communications concerning Arcadia's "hospital in a box" solution and business model.

13.     All Documents and Communications concerning any alleged non-compete, non-solicitation, and non-disclosure agreements or obligations Sean Kirrane may have with the FP Group.

14.     All Documents and Communications concerning any non-compete, non-solicitation, and non-disclosure agreements or obligations may Patrick Waters have with the FP Group.

November 20, 2020                                   Respectfully submitted,

                                                   By: s/ *J. Clay Christensen*
                                                   J. Clay Christensen (OBA #11789)
                                                   Jeffrey E. Tate (OBA # 17150)
                                                   Jonathan M. Miles (OBA #31152)
                                                   Brock Z. Pittman (OBA #32853)
                                                   **CHRISTENSEN LAW GROUP, P.L.L.C.**
                                                   3401 N.W. 63rd Street, Suite 600
                                                   Oklahoma City, Oklahoma 73116
                                                   Telephone: (405) 232-2020
                                                   Facsimile:  (405) 228-1113
                                                   Clay@christensenlawgroup.com
                                                   Jeffrey@christensenlawgroup.com
                                                   Jon@christensenlawgroup.com
                                                   Brock@christensenlawgroup.com


                                                   Christopher Tayback (CA Bar No. 145532 – *application for admission pro hac vice pending*)
                                                   Kristen Bird (CA Bar No. 192863 – *application for admission pro hac vice pending*)
                                                   Eric D. Winston (CA Bar No. 202407 – *application for admission pro hac vice pending*)
                                                   **QUINN EMANUEL URQUHART & SULLIVAN LLP**

16

865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
christayback@quinnemanuel.com
kristenbird@quinnemanuel.com
ericwinston@quinnemanuel.com

*Attorneys for Creditors Rural Hospital
Acquisition, LLC, First Physicians Realty
Group, LLC, First Physicians Business
Solutions, LLC, First Physicians Services,
LLC, and First Physicians Resources, LLC*