UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re. ) | Case No.: 20-13482-SAH |
| ) | Chapter 11 |
| RHA Stroud, Inc.,[1] ) | |
| ) | [Jointly Administered] |
| Debtor. ) | |
| _____ ) | |

**UNITED STATES TRUSTEE'S RESPONSE IN SUPPORT OF FP GROUP'S AMENDED MOTION TO DISMISS OR ABSTAIN, WITH BRIEF IN SUPPORT AND NOTICE OF OPPORTUNITY FOR HEARING**
[Docket #65]

The United States Trustee ("**UST**"), in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a), respectfully requests this Court to enter an order dismissing this case pursuant to section 1112(b) or, alternatively, an order of abstention pursuant to section 305(a)(1) of the United States Bankruptcy Code.[2] In support of this Response, the UST represents as follows:

**BACKGROUND**

1. RHA Stroud, Inc. and RHA Anadarko, Inc. are both defendants in a lawsuit filed in Lincoln County, Oklahoma by Rural Hospital Acquisition, LLC ("RH Acquisition"), First Physicians Realty Group, LLC ("FP Realty"), CJ-20-31, on February 24, 2020 ("State Court Case").

2. On September 14, 2020 a hearing was held in the State Court Case and, on September 25, 2020, the court ultimately ordered the appointment of David Rhodes as receiver.

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification number is: RHA Stroud, Inc. (2635) and RHA Anadarko, Inc. (2528). The principal place of business for the Debtors is 2308 Highway 66 West, Stroud, OK 74079 and 1002 East Central Blvd. Anadarko, OK 73005.

3. Subsequently, it appears that a dispute arose in the State Court Case regarding the details of the receiver's duties and powers and a hearing was scheduled for November 4, 2020.

4. Ten days prior to the November 4 hearing, on October 25, 2020, the debtor RHA Stroud, Inc. filed its voluntary petition seeking relief under chapter 11 of the of the Bankruptcy Code[3]. RHA Stroud, Inc. is doing business as Stroud Regional Medical Center.

5. Also ten days later on October 25, 2020 the debtor RHA Anadarko, Inc. filed its voluntary petition seeking relief under chapter 11 of the Bankruptcy Code. RHA Anadarko, Inc. is doing business as the Physicians Hospital in Anadarko.

6. An order of joint administration was entered for these cases on November 3, 2020 (Docket #50).

7. Several "first day" motions were also filed on October 25, 2020 along with the Declaration of Charles M. Eldridge in support of the first day motions ("Eldridge Affidavit") (Docket #6).

8. A review of the Eldridge Affidavit provides scarce information on why these bankruptcy cases were filed and a plethora of information regarding the dispute with FP Group. A review of the Debtors' Answer in the Lincoln County case reveals that the majority of the information included in the Eldridge Affidavit is identical to the Debtors' assertions in the State Court Action.

9. The Debtors' schedules and statements of financial affairs were due November 9, 2020.

10. On November 6, 2020 the Debtors filed an amended motion requesting an extension of

---

[2]    11 U.S.C. §§ 101–1532. All statutory references shall refer to the United States Bankruptcy Code unless otherwise noted.

time, until November 23, 2020, to file their respective schedules and statements of financial affairs on (Docket #67).

11. Also on November 6, 2020, FP Realty along with First Physicians Business Solutions, LLC ("FP Business"), First Physicians Services, LLC ("FP Services"), and First Physicians Resources, LLC ("FP Resources") (collectively with RH Acquisition, FP Realty, FP Business, and FP Services, the "FP Group") filed their Amended Motion to Dismiss or Abstain (Docket #65).

12. On November 12, 2020 an agreed order was entered granting the Debtors' motion to use cash collateral (Docket #100).

13. Five days later, on November 17, 2020 FP Group filed its motion to show cause against the Debtors for failing to abide by the cash collateral terms (Docket #142).

14. On November 20, 2020 the Debtors filed their response to FP Group's motion to show cause (Docket #153). In said response the Debtors asserted: "Payment of the invoices FP Group was demanding to be paid would have clearly then left RHA Stroud, and likely RHA Anadarko, with insufficient funds to pay trade creditors, including the critical vendors who FP Group is demanding to be paid."

15. The Debtors filed their respective schedules and statements of financial affairs on November 23, 2020 (Docket ## 162 - 165).

---

[3] All statutory references shall refer to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise stated.

16. On November 24, 2020 this Court entered an order granting the UST's motion pursuant to 11 USC §333 for an order directing the appointment of a patient care ombudsman and requiring a $5,000 evergreen retainer (Docket #175).

17. On November 25, 2020 the UST appointed Deborah Burian as the patient care ombudsman (Docket #181).

18. The Section 341 meeting of creditors is set for November 30, 2020 at 2:00 p.m.

### BRIEF IN SUPPORT

**CAUSE EXISTS FOR DISMISSAL**

19. Section 1112(b) requires that the Court shall, in the absence of "unusual circumstances," convert a chapter 11 case to one under Chapter 7, or dismiss the case, if a party in interest establishes "cause." *In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)").

20. Section 1112(b) provides that this Court shall convert a case under chapter 11 to one under chapter 7 or dismiss the case, "whichever is in the best interests of creditors and the estate," for cause. The Court may not convert or dismiss the case if there are "unusual circumstances" established showing that conversion or dismissal is not in the best interests of the creditors and the estate. Provided, there must be a reasonable likelihood

that a plan will be confirmed within a reasonable time, there is "reasonable justification for the acts or omissions" serving as grounds for the motion, and the act or omission will be cured within a "reasonable period of time fixed by the court."

21. Section 1112(b)(4) provides sixteen examples of "cause." The list is non-exhaustive. Therefore, non-identified acts or failure to act may also constitute cause. *In re Whetten*, 473 B.R. 380, 382 (Bankr. Colo. 2012).

**Nothing to Reorganize**

22. One of the listed causes is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

23. In this case it appears the sole reason for this bankruptcy filing was to renegotiate the management contract with FP Group. Having lost in state court with a receiver appointed, the Debtors opted to file this bankruptcy.

24. The Debtors leased the physical hospital buildings from FP Group. The Debtors have no employees. The Debtors do not run or manage the hospitals; rather a management company does this. There is nothing to reorganize.

25. In the meantime, the Debtors continue to lose money, have failed to timely review, approve, and ultimately ensure timely payment of their weekly invoices, as required by the cash collateral order, and appear to be administratively insolvent. These factors reveal the substantial and continuing loss to or diminution of the estate.

**Failure to Provide all Reports and Other Required Information**

26. Another one of the listed causes for dismissal is "failure timely provide information or attend meetings reasonably requested by the United States Trustee…" 11 U.S.C. §

1112(b)(4)(H).

27. The Debtors, through their legal representative and proposed counsel, attended an intake meeting with the UST on October 30, 2020.

28. At said meeting, the Debtors were instructed and requested to file their Initial Report by November 9, 2020.  The UST also requested certain banking documents from the Debtors.

29. The Debtors were reminded of these requirements/requests, in writing from the UST, on November 3, 2020

30. To date, the Debtors have failed to file their Initial Report.

31. To date, the Debtors have failed to provide all the requested banking documents.

**Lack of Good Faith**

32. A lack of good faith can also be grounds for dismissal.  The court in *In re Forest Hill Funeral Home & Mem'l Park*, 364 B.R. 808 (Bankr. E.D. Okla. 2007) addressed this very issue and found that the following factors should be used to evaluate good faith in the filing of a bankruptcy case:  (1) debtor has one asset, (2) debtor's prepetition conduct has been improper, (3) there are only a few unsecured creditors, (4) debtor's property has been posted for foreclosure, and debtor has been unsuccessful in defending against foreclosure in state court, (5) debtor and one creditor have proceeded to a standstill in state-court litigation, and debtor has lost or has been required to post a bond which it cannot afford, (6) filing of petition effectively allows debtor to evade court orders, (7) debtor has no ongoing business or employees, and (8) lack of possibility of reorganization.

33. Here, these cases appear to involve single assets.  Each Debtor essentially owns a hospital

that is managed by a third party.

34. There are few if any unsecured creditors. There are a number of trade vendors that had previously been paid in the ordinary course and for which approval has been granted to pay as critical vendors. However, prior to the bankruptcy filing no trade vendors had gone unpaid.

35. In the State Court Case an order for the appointment of a receiver was entered on September 25, 2020. The Debtors objected to the appointment of a receiver and lost. Just prior to a hearing on the details of the receiver appointment the Debtors filed this bankruptcy case, thus staying that hearing.

36. The Debtors do not provide any direct care, staffing or supplies for the hospitals. The Debtors have no employees, instead the hospitals are run by a management company. There is no indication that the management company was not providing proper healthcare. In fact, there are several indications that the healthcare provided was excellent.

37. As cited above, there does not appear to be anything for the Debtors to reorganize. Rather, they are using the bankruptcy process to get another bite at the apple in the State Court Case and to re-negotiate the management contracts.

38. The Debtors' good faith can also be questioned by the failure to abide by the cash collateral terms as discussed above.

39. All the factors above, when considered together, put the Debtors' good faith in question.

**ABSTAIN**

40. This case is essentially a two party dispute between the Debtors and FP Group. This dispute already resulted in an appointed receiver in state court. The UST asserts that

bankruptcy is not the proper forum for this case. The state court was and remains the proper form for this two party dispute.

41. The *Forest Hill* court also dealt with the issue of whether to abstain under § 305(a)(1), which states that a bankruptcy court "may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension." As noted by the court, factors to be considered include:

> the motivation of the parties in seeking bankruptcy jurisdiction;
>
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
>
> (3) the economy and efficiency of administration; and
>
> (4) the prejudice to the parties.

The court went on to say that the decision whether to abstain from hearing a particular case is left to the sound discretion of the bankruptcy court. *Id.* at 824.

42. Applying the factors noted in *Forest Hill,* the history and facts of this case certainly give the indication that this bankruptcy case was filed as an opportunity to have a do-over of the receiver appointment and to re-negotiate the management contracts. The state court was effectively handling the dispute and is certainly capable of continuing to handle and resolve the dispute. David Rhodes, who has extensive receivership experience, was appointed as the receiver. Bringing this dispute to the bankruptcy court is certainly not cost effective for either party, especially when certain matters are sought to be re-litigated, and when patient care is ultimately at risk.

43. This estate appears to be administratively insolvent.  The Debtors have already been short on the cash required to pay its weekly invoices. Much is at risk in this case.  Allowing an administratively insolvent bankruptcy case to continue in this forum puts the patients at risk.  Adding the expenses of a statutorily required patient care ombudsman brings another layer of required and necessary bankruptcy expenses to an already fractured budget.  This is particularly worrisome given the current circumstances of the global pandemic.

   **WHEREFORE**, based on the foregoing, the UST respectfully requests that this Court enter an order dismissing this case or an order of abstention; and for such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted

ILENE J. LASHINSKY

UNITED STATES TRUSTEE

s/ Marjorie J. Creasey
Marjorie J. Creasey, OBA #17819
Office of the United States Trustee
215 Dean A. McGee, Fourth Floor
Oklahoma City, OK  73102
(405) 231-4393/231-5958 [fax]
Marjorie.Creasey@usdoj.gov