IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re. | ) | Case No.: 20-13482-SAH |
| | ) | Chapter 11 |
| RHA Stroud, Inc.,[1] | ) | |
| | ) | [Jointly Administered] |
| Debtor. | ) | |

**DEBTORS' REPLY TO FP GROUP'S AND FIRST PHYSICIAN CAPITAL, INC.'S
JOINT OPPOSITION TO DEBTORS' AMENDED MOTION FOR AUTHORITY TO
ENTER INTO MANAGEMENT SERVICES AGREEMENTS WITH ARCADIA
HEALTH PARTNERS, LLC PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)**

RHA Stroud, Inc., d/b/a Stroud Regional Medical Center ("Stroud Hospital") and RHA

Anadarko, Inc. d/b/a The Physicians' Hospital in Anadarko ("Anadarko Hospital") (each a

"Debtor," and collectively, the "Debtors" or "Hospitals") respectfully file this reply to the FP

Group's and First Physician Capital, Inc.'s Joint Opposition to Debtor's Amended Motion for

Authority to Enter into Management Services Agreements with Arcadia Health Partners, LLC

Pursuant to 11 U.S.C. §§ 105(a) and 363(b) (the "Objection") and say:

### INTRODUCTION

Finding an alternative to the FP Group is crucial to the Debtors short-term reorganization

and long-term survival. The principals of Arcadia Health Partners, LLC ("Arcadia"), in tandem

with Southern Plains Medical Group ("SPMG") and Cohesive Healthcare Solutions ("CHS,"

together with SPMC are collectively, the "Subcontractors"), have a proven track record not only

in operating these very same Hospitals, but in operating other Hospitals going through chapter 11

reorganizations. They have the knowledge, workforce, and ability to immediately step in as the

new manager.  The FP Group continues to escalate costs beyond industry standards, continues to

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification number is: RHA Stroud, Inc. (2635) and RHA Anadarko, Inc. (2528).  The principal place of business for the Debtors is 2308 Highway 66 West, Stroud, OK 74079 and 1002 East Central Blvd. Anadarko, OK 73005.

assert control over the Debtors, and continues to lose talented officers and employees. The FP Group can and must be replaced.  No one disputes the FP Group's contracts are not viable, and have resulted in ever increasing costs, escalating revenue and profits to FP Group ($19 million in FY 2020) and escalating losses to the Hospitals. This Court should approve the Debtors' business judgment in seeking to enter into a viable management contract with Arcadia for the benefit of the community, these estates, and all creditors and interested parties.

**A. The Subcontractors Currently Operate in the Hospitals, Operate Other Hospitals, Operate Other Chapter 11 Debtors and Together with Arcadia Have the Experience and Available Medical Staff to Take Over Without Disruption**

While Arcadia is a newly formed entity, the collective and pertinent experience of its members in operating hospitals is extensive.  The FP Group purposefully focuses on the date Arcadia was created rather than the long and solid experience of its principals and its Subcontractors.  Arcadia's management unquestionably knows how to operate the Hospitals and have proposed a viable management contract for the Debtors.

The FP Group seeks to disparage Sean Kirrane and Mr. Waters by repeatedly stating they were terminated for cause.  They fail to mention that Mr. Kirrane, the CEO of Arcadia, was employed by the FP Group and promoted from within to serve as the FP Group's CEO for 6 years from 2013 - 2019.  The basis of his dismissal is disputed by Mr. Kirrane who has asserted that he was terminated for being a whistleblower.  Regardless, there is no suggestion the Hospitals were not well run during Mr. Kirrane's tenure at FP Group.

Arcadia and CHS have no intention on contacting FP Group's employees.  They have the staff to support the Hospitals.  CHS has enormous depth and works with several medical providers. They anticipate upon posting any job opportunity, the job will be immediately filled.  However, if necessary, they have staffing companies as a back stop to ensure a seamless transition.

2

What is extremely disconcerting is the FP Group's warning in its Objection, that notwithstanding the Debtors' expectations to work with the FP Group to have a smooth transition, the FP Group boldly asserts "the FP Group has no obligation to assist a competitor." Objection, p. 17. We are dealing with patients' lives that should not be bargaining chips in a debt dispute. Choosing Arcadia over the FP Group as a partner in operating the Hospitals falls well within the sound business judgment of the Debtors. The FP Group's threats if they do not remain as manager highlights the very reason this case belongs in chapter 11, and why their executory contracts must be rejected.

**B. The Argument that the FP Group Requires Adequate Protection is Illusory**

As the FP Group is aware, the value of the Debtors is not in assets they have, but in their ability to continue operating the Hospitals. The assets of the Debtors include accounts receivable, the operational licenses, cash, lease rights, equipment, and supplies. The surplus the Arcadia agreement will generate directly benefits the FP Group, as such will go towards paying creditors under a plan. The Debtors' assets are not jeopardized in the Debtors continued operation of the Hospitals by using a different vendor.

The *In re Pacific Lifestyle Homes, Inc*., 2009 WL 688908 (Bankr. W.D. Wash. Mar. 16, 2009) case, cited to by the FP Group, provides the following test to determine whether adequate protection has been provided to a secured creditor:

> In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard. This flexibility, however, must not operate to the detriment of the secured creditor's interest. In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

*In re Pac. Lifestyle Homes, Inc*., No. 08-45328, 2009 WL 688908, at *10 (Bankr. W.D. Wash. Mar. 16, 2009) *citing to In re Martin*, 761 F.2d 472, 476-77 (8th Cir.1985).

55590196;5

There cannot be a diminution in value to the FP Group's cash collateral if they readily admit they cannot run the Hospitals at a surplus. The cases cited by the FP Group for cash-collateral/adequate protection, involve different collateral – *i.e.* real property or the proceeds from the loan provided by the secured creditor which had not been used yet. None of those cases involved the collateral at issue in this case *i.e.* accounts receivable and operational licenses that no one can hold except the Debtors.  Both assets are further secured by the FP Group's super priority liens, making them untouchable for all intents and purposes in this case. Under the test in *Pacific Lifestyle*, because the FP Group cannot articulate a reason that they would be worse off by the Arcadia contract, the FP Group is adequately protected if the Debtors employ Arcadia to manage the Hospitals.

The Debtors agree the FP Group does not have to "help a competitor" but the FP Group is required to ensure that there is a transition in the medical care of patients to the new manager.  The FP Group mistakenly believes it can prevent the Debtors' entry into new cost saving contracts by continuing its toxic behavior as a basis for binding the Debtors to the FP Group agreements in perpetuity. This type of anticompetitive conduct is not allowed. In *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 623 (4th Cir. 2002), for example, a competitor of the debtor brought a patent infringement lawsuit, forcing the debtor to file for chapter 11. The *Mac Panel* court in denying the competitors request for a stay pending appeal held that:

> In the present case, VPC is not solely a creditor and has not been guided solely by the instincts of a creditor. Unlike any other creditor in the case, VPC would benefit significantly from the failure of MAC Panel because such failure would eliminate the competition. The longer MAC Panel remains in bankruptcy, the longer MAC Panel must compete against a competitor who not only is in a position to utilize MAC Panel's presence in Chapter 11 to gain competitive advantage but, in its dual status as a creditor, also is in a position to oppose and prolong MAC Panel's efforts to emerge from bankruptcy.

*Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 627 n.* (4th Cir. 2002).

Much like the competitor creditor in *Mac Panel*, the FP Group has a vested interest in hurting the competition *i.e.* Arcadia and the Subcontractors, and in maintaining for themselves very profitable contracts, even as the Hospitals lose money. The FP Group's narrow self-serving interests should not govern how this case should proceed, especially when the Debtors appropriately filed for bankruptcy, are seeking pertinent bankruptcy specific relief, there are other parties that are not the FP Group that rely on the Debtor's continued operations, and, the entry into the contract with Arcadia will benefit these estates and the communities.

**C. The Arcadia Agreement is Not Misleading and Provides Tangible Benefits**

The one line item that does not have an explicit cap in the Arcadia agreement is for general consulting services, expected to be minimal. No cap was provided because these are not meant to be recurring services every month. Simply put, it is not a "trojan horse" left open for abuse.

The purpose of these Chapter 11 Cases is not to preserve the *status quo*, but to move forward and reorganize. Ultimately, the Debtors will be proposing a plan of reorganization in which cost savings will be directed towards creditors. The Arcadia agreement provides for a much lower operational cost than the FP Group's exorbitant costs and, therefore, benefits these estates. Arcadia and the Subcontractors have experience and a track record in running hospitals, including several in chapter 11, and based on that experience, agreed to costs that make the Arcadia agreement feasible. It is undisputed that the current cost structure is untenable, creating massive profits for FP and annually escalating losses for the Hospitals. The Debtors should no longer be controlled by the FP Group and forced to pay their wildly excessive costs. This financial abuse together with the toxic relationship require the current FP Group contracts to be rejected and replaced with a more rational cost structure and partner, Arcadia. The Debtors have established the business judgment for the entry into the Arcadia agreement and the Motion should be granted.

Dated: December 7, 2020                    Respectfully Submitted,

                                                     **AKERMAN LLP**
By: *s/ Esther McKean*
Esther McKean
Florida Bar No. 028124
420 S. Orange Ave., Suite 1200
Orlando, Florida, 32801
Telephone: 407- 419-8583
Fax : 407-843-6610
esther.mckean@akerman.com
*Pro Hac Vice Admitted*


By: *s/ David W. Parham*
David W. Parham
Texas Bar No. 15459500
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: 214-720-4300
Fax : 214-981-9339
david.parham@akerman.com
*Pro Hac Vice Admitted*


By: *s/ Catherine Kretzschmar*
Catherine Kretzschmar
Florida Bar No. 85843
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: 954-486-2443
Fax : 954-847-5336
catherine.kretzschmar@akerman.com
*Pro Hac Vice Admitted*

6

**RUBENSTEIN & PITTS, PLLC**

By: s/ Michael A. Rubenstein
Michael A. Rubenstein, OBA #7806
Leif Swedlow, OBA #17710
1503 E. 19th Street
Edmond, OK  73013
Telephone:  405 -340-1900
Fax: 405-340-1001
mrubenstein@oklawpartners.com
lswedlow@oklawpartners.com

Proposed Attorneys for Debtors

## CERTIFICATE OF SERVICE

This is to certify that on the Monday, December 7, 2020, a true and correct copy of the *Debtors' Reply to FP Group's and First Physician Capital, Inc.'s Joint Opposition to Debtor's Amended Motion for Authority to Enter into Management Services Agreements with Arcadia Health Partners, LLC Pursuant to 11 U.S.C. §§ 105(a) and 363(b)* was served upon counsel registered with the CM/ECF system in this case and was forwarded via U.S. Mail, first class, postage prepaid to the those parties listed on the attached matrix.

By: *s/ Esther McKean*
 Esther McKean, Esq.

55590196;5